JAMES SHAW'S CASE.

Suffolk.    October 19, 1923. — December 22, 1923.

Present: RUGG, C.J., BRALEY, DeCOURCY, & PIERCE, JJ.

*Workmen's Compensation Act*, Amount of compensation, Appeal.

At the hearing of a claim by an employee for compensation under the work-men's compensation act, it appeared that when injured the employee's earning capacity was $24 per week; that thereafter for several weeks the employer paid the employee at that rate but that $8 of that amount per week was a gratuity, and that, at the date of a hearing by a single member of the board, the employee was "getting the same wages as he earned previous to his injuries" and "for the past few weeks" previous to the hearing he "earned his full wages." Compensation was awarded at the rate of one half of $16, which was found to be his earning capacity, namely, at the rate of $8 per week, for a period that extended seven months after the date of the hearing. *Held*, that the insurer could not be held for the full amount awarded as it appeared that for an appreciable part of the time covered the employee was earning the average weekly wages, not including overtime, which he had received previous to his injury.

On an appeal by an insurer from a decree of the Superior Court awarding compensation to an injured employee under the workmen's compensation act for incapacity beginning with a certain date, the insurer has no standing to claim credit for alleged overpayments by him to the employee during a period preceding that date.

CERTIFICATION to the Superior Court under the provisions of the workmen's compensation act of a decision of the Industrial Accident Board relating to the amount to be paid for partial incapacity to James Shaw who, on February 14, 1920, received an injury in the course of and arising out of his employment by Taunton Hotel Company.

Material facts found by the board in affirmation of the findings by the single member of the board are described in the opinion.

In the Superior Court, by order of *Wait*, J., a decree was entered directing the payment to the claimant of partial compensation of $8 per week for twenty-three weeks from January 21, 1922, of which the employee had already received $32, " leaving a balance due of $152 plus a weekly compensation thereafter of $8 per week from July 2, 1922, which, up to and including the week of March 25, 1923, totals $312, making the total amount due the employee the sum of $464." The insurer appealed.

*E. I. Taylor & H. S. Avery,* for the insurer, submitted a brief.

No argument nor brief for the employee.

BRALEY, J. The employee on February 14, 1920, fractured his right patella in the course of, and arising out of his employment by the subscriber the Taunton Hotel Company, hereafter referred to as the employer, and " the insurer entered into an agreement to pay him $16 a week for total incapacity for work, based on an average weekly wage of $28, and compensation was paid in accordance with this agreement up to and through January 21, 1922. Since that date the insurer paid the employee $4 for the week ending April 1, and $4 each for the week ending April 29, May 6, 13, 20, 27, June 3, and June 10." The record states that the question for decision was the employee's " incapacity since January 21, 1922."

The board member, who heard the case in the first instance and whose findings and decision were adopted and affirmed by the Industrial Accident Board on review under the insurer's appeal, was warranted in finding on the evidence of the employee and of the impartial physician, that at the date of the hearing, July 5, 1922, he was still incapacitated " for the performance of many of the duties which his employment calls for and which he performed before the injury." While the insurer does not question this finding, it contends, that there was no evidence warranting the further findings which fixed his earning capacity at $16 a week during the period in question. The statute provides,. " While the incapacity for work resulting from the injury is partial, the insurer shall pay the injured employee a weekly compensation equal to two thirds of the difference between his average weekly wages before the injury and the average weekly wages which he is able to earn thereafter, but not more than sixteen dollars a week; and the amount of such compensation shall not be more than four thousand dollars." G. L. c. 152, § 35. It was undisputed that before the injury his earning capacity was at least $24 a week, and the extent of its impairment after January 1, 1922, to the date of the hearing was the question for decision.

In substance the employee testified that he received no money from the employer while he was out of work, although " after the insurance company stopped paying," quite often " the hotel gave him $8 to help him out . . . because he had a big family." In reply to questions by the board member he said that " he was back there working some of the time," and notified the insurance company he had " gone to work," but could not tell the date when he resumed work or of the notice, and that the insurer subsequently paid him $4 for two weeks only, when the payments ceased. The evidence of the employer's treasurer, a witness called by the insurer, shows, however, that on January 21, 1922, he was engaged in such work as he was able to perform, receiving $24 a week, except that on April 1 and April 4 the payments were $20, to which the payments for those weeks by the insurer of $4 for each week afforded a weekly revenue of $24. It is

true, as contended by the insurer, this witness also said that for the last few weeks the employee " has earned his full wages and he also earned it back in January . . . working along the same lines as previous to the accident but he is not able to do a ceiling; he is doing the greater part of the general repair work." If this were all the evidence, the employee was earning $24 a week, the amount of his average weekly wages prior to the injury. But the witness further testified, that while " he was disabled the hotel paid him the balance between what the insurance company was paying him and his wages so that he got his full wages," and that before " he came back to work the hotel gave him $8 a week . . . all the time he was out; the idea of the company was to make up the difference; if they did not have him insured they would have paid him his full wages." The board member found that during the weeks under review the subscriber paid full wages not because the employee was able to earn them, but because the insurer had stopped payments. "From the time the employee was injured the subscriber has paid him enough money each week to make up the $24 he earned before his injury. This $24 was his regular wage, overtime raising it to $28.

The statute awards compensation for loss of earning capacity caused by the injury as compared with the employee's average weekly wage received by him before the injury, and, the findings having been supported by the board member's view of the evidence, and of the credibility of the witnesses, we cannot say as matter of law that they are erroneous. *Diaz's Case*, 217 Mass. 36. It follows from these findings and the findings of continuing partial incapacity that the employee is entitled to compensation, the amount of which was to be determined. *Donnelly's Case*, 243 Mass. 371. *Johnson's Case*, 242 Mass. 489.

The insurer contends that there is reversible error in the further findings fixing the employee's earning capacity at $16, and that " he still is limited to that amount." It could be found on all the evidence that while the employer gave the employee $24 a week for many weeks, $8 of the amount was a gratuity, apparently leaving his earning capacity at

$16 for a very substantial portion of the period, and on this basis he was allowed partial compensation at the rate of $8 a week for twenty-three weeks from January 21 to July 1, 1922. But at the date of the hearing by a single member of the Industrial Accident Board, July 5, 1922, he was "getting the same wages as he earned previous to his injury;" and "for the past few weeks" previous to the hearing he "earned his full wages." The insurer therefore cannot be held for the full amount awarded where for any appreciable part of the time the employee was earning the average weekly wages not including overtime he had formerly received.

It is also contended that even if the claimant finally prevails, the insurer should be credited with alleged overpayments from September 12, 1921, to January 1, 1922, as well as the payments for eight weeks allowed by the board member. But on the employee's evidence it could be found there were no overpayments. The inquiry moreover was limited to a period which did not include payments made prior to January 21, 1922.

While error appears for the reasons stated, and the decree must be reversed, the case is recommitted to the Industrial Accident Board for further proceedings not inconsistent with this opinion. *Doherty's Case,* 222 Mass. 98. *Fierro's Case,* 223 Mass. 378. *Comerford's Case,* 224 Mass. 571.

*Ordered accordingly.*