ALBIN J. NOWAK'S CASE.

Hampden.   February 13, 1974. — August 7, 1974.

Present: HALE, C.J., KEVILLE, & ARMSTRONG, JJ.

*Workmen's Compensation Act,* Amount of compensation, Double
employment, Finding by Industrial Accident Board.

In a workmen's compensation case evidence warranted a conclusion
that the earning capacity of a partially disabled employee with
respect to concurrent employment, from which his earnings varied
from week to week, was the highest weekly wage he had received
from such employment. [499-501]

CERTIFICATION to the Superior Court of a decision by
the Industrial Accident Board under the Workmen's
Compensation Act.

The case was heard by *Hayer,* J.

*Henry A. Moran, Jr.,* for the employee.

*William J. McCarthy, Jr.,* for the insurer.

ARMSTRONG, J.   This workmen's compensation claim is
for partial disability compensation from December 15,
1971, to December 28, 1972, and continuing thereafter in
accordance with G. L. c. 152, § 35, as amended through
St. 1969, c. 529, § 3.   The single member determined
that the employee was entitled to receive $2.25 per week.
The reviewing board affirmed, and the Superior Court
entered a final decree in conformity with the board's
decision.   This appeal by the employee raises the
questions whether the reviewing board erred (1) in
computing the average weekly wage capable of being
earned from a concurrent employer on the basis of the
highest week's earnings from that employer and (2) in
considering payments from a private pension plan in
determining the employee's earning capacity.

On judicial review the decision of the board must be accepted as final, if supported by the evidence and not tainted by error of law. *Haley's Case*, 356 Mass. 678, 680 (1970), and cases cited. *Papanastassiou's Case*, 362 Mass. 91 (1972). As the board affirmed and adopted without change the findings and decision of the single member, we must look to that decision to determine whether the action of the board is correct. *Russo's Case*, 1 Mass. App. Ct. 206 (1973). *Sutherland's Case, ante,* 58, 59 (1974). *McEwen's Case, ante,* 63 (1974).

An employee's partial incapacity compensation under G. L. c. 152, § 35, is required to be "equal to the entire difference between his average weekly wage before the injury and the average weekly wage he is able to earn thereafter. . . ." In this case the single member found that prior to his injury of August 17, 1965, the employee received an average weekly wage of $146.85 from his concurrent employment with the Colorado Fuel and Iron Company (company) and the Gilbertville Water District (district). This amount was adopted from the findings of another reviewing board in a decision dated January 21, 1972, dealing with the employee's prior claim for partial disability compensation arising from the 1965 injury. That finding is not challenged here. The single member also found that the employee's earning capacity after the injury, at the time of the hearing before the single member, was $144.60 per week, the sum of "the $110.60 he was earning . . . [from the company] prior to his commencing to collect unemployment compensation and the $34 a week he has demonstrated he was capable of earning at the . . . [d]istrict." The difference between the employee's average weekly wage before the injury, $146.85, and the average weekly wage the employee was found to be capable of earning after the injury, $144.60, was $2.25 per week, the amount of the award.

The employee does not contest the action of the single member in considering the wages paid by both of his employers, which was proper under *Nelson's Case,* 333

Mass. 401 (1956), and *Robinson's Case,* 354 Mass. 282 (1968). Nor does the employee argue that there was error in combining earnings from the company in one time period with those from the district in another time period. Rather, the employee contends that in computing the average weekly wage he was capable of earning the single member erred in using the figure of $34, the highest weekly wage paid to him by the district, as the amount that the employee "has demonstrated he was capable of earning" from his concurrent employment with the district. The single member evidently reasoned that, if the employee actually earned $34 from the district in one week, he was capable of earning that much every week, including the weeks during which he was simultaneously employed by the company and the district.

The determination of an employee's post-injury earning capacity by the board is accorded great weight on judicial review. Indeed, it has been held that, in the absence of any testimony concerning earning capacity, the board may exercise its own judgment as to what that earning capacity is. *O'Reilly's Case,* 265 Mass. 456, 458 (1929). *Carmossino's Case,* 268 Mass. 35, 38 (1929). Where there is evidence of actual wages received by the employee, the determination of his earning capacity is not necessarily concluded by those wages. *Carmossino's Case, supra. Korobchuk's Case,* 277 Mass. 534, 536-537 (1931). The board may consider "the whole monetary result of a reasonable use of all his powers, mental and physical, whether working for others or for himself, and whether his earnings are called 'wages' in common speech or not." *Federico's Case,* 283 Mass. 430, 432 (1933).

In this case the single member had before him evidence of the weekly paychecks the employee received from the district during the period from December 5, 1971, to April 15, 1972. These varied greatly from week to week, the lowest being $8 and the highest $34. There was

testimony to the effect that the employee's work for the district consisted of two functions, one in supervising certain work, and the other in reading meters. The latter function was compensated at the rate of $50 quarterly, paid in January and April of the period covered by the evidence. The quarterly payments appear, however, not to have been made in lump sums. Rather, they appear to have been spread over a period of weeks in January and April. These payroll records, coupled with the employee's own testimony to the effect that the meter reading was done quarterly, warranted an inference that the payments in January and April were for work done in January and April. The evidence may not even warrant, and certainly does not require, the contrary inference that the higher weekly paychecks in January and April were for work performed over a more extended period of time. On this evidence we cannot say as matter of law that the single member could not treat the highest weekly wage which the employee had earned from the district as the average weekly wage he was capable of earning from concurrent employment. Although the evidence was not as compelling as one might wish, we note that "the burden rested on the employee to prove facts necessary to entitle him to compensation." *O'Reilly's Case,* 265 Mass. 456, 458 (1929).

The employee's second contention is without merit. Although the single member referred to a company pension in his decision, it is clear from the record that the pension was not considered in determining the employee's earning capacity. Therefore, we need not consider whether the admission of the letter setting forth the terms of the pension plan was erroneous.

*Decree affirmed.*