# KENNETH A. SJOBERG'S CASE.

Worcester.  December 6, 1984. — April 8, 1985.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, LYNCH & O'CONNOR, JJ.

*Workmen's Compensation Act,* Incapacity, Amount of compensation, Interest.

An employee whose earning capacity had been impaired by industrial injuries and who had been awarded workmen's compensation payments under G. L. c. 152, § 35, was not precluded from receiving such payments by reason of the fact that, as a result of his working longer hours, his post-injury weekly earnings exceeded the weekly wage he had received prior to the injury. [460-463]

A finding by the Industrial Accident Board in a workmen's compensation case that an employee was partially disabled after a certain date as the result of industrial injuries and was entitled to an award of payments under G. L. c. 152, § 35, was warranted by medical evidence. [463-464]

An award of interest on workmen's compensation payments due an injured employee on a weekly basis for the period from the date he filed his claim to the date of the Superior Court judgment in his favor was to be computed on each unpaid weekly payment pursuant to G. L. c. 152, § 50, rather than on the entire amount due on the date of the judgment. [464-465]

CERTIFICATION to the Superior Court Department of a decision by the Industrial Accident Board.

The case was heard by *John H. Meagher,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Arthur W. Nichols, Jr.,* for the insurer.

*Raymond H. Giguere* for the employee.

ABRAMS, J. We granted further appellate review to consider whether an injured employee whose average post-injury earnings ultimately exceed his average pre-injury weekly wage solely because of his working substantial overtime hours, is precluded from receiving partial compensation under G. L.

c. 152, § 35.[1] The Appeals Court held that the Industrial Accident Board (board) and the Superior Court correctly concluded that the employee was not so precluded. *Sjoberg's Case,* 18 Mass. App. Ct. 1 (1984). We agree that there is no error in the board's determination and we affirm the judgment of the Superior Court except for the matter of the award of interest.

We summarize the facts as found by the single member of the board. On August 22, 1977, the employee first suffered pain in his back and stomach while performing work as a pressman and molder. He received weekly compensation benefits from that date until his return to work on September 22, 1977. On June 12, 1978, in similar circumstances, he felt a snapping sensation in his back. He was out of work from June 13 through June 16, 1978, and from July 12 through July 30, 1978, during which periods he received weekly workers' compensation benefits. On returning to work, the employee's back remained stiff and sore. When he learned that he did not get a less strenuous job for which he had put in a bid, he submitted his resignation effective October 20, 1978. The employee filed a claim for compensation on November 24, 1978, for partial incapacity from October 20, 1978, and continuing.

The employee's average weekly wage at the time of the June 12, 1978, industrial injury was $302.31. The employee obtained various jobs after his resignation and in 1981, "[w]orking over 50 hours a week . . . his average weekly wage was $317.48." The single member noted that "[n]one of the jobs which the employee . . . performed since leaving the employer have been as physically demanding as his work for the employer." The single member stated that "[w]hile average weekly wage before and after an industrial injury are important pieces of evidence, this evidence is not conclusive on the issue of loss of earning capacity." He awarded the employee $40 a week for his diminished earning capacity.

---

[1] General Laws c. 152, § 35, as appearing in St. 1973, c. 978, § 6, provides in relevant part: "While the incapacity for work resulting from the injury is partial, the insurer shall pay the injured employee a weekly compensation equal to the entire difference between his average weekly wage before the injury and the average weekly wage he is able to earn thereafter . . . ."

The board affirmed and adopted the findings and decision of the single member on September 16, 1982. Liberty Mutual Insurance Company (insurer) filed a complaint in the Superior Court denying any liability for compensation claimed by the employee after July 30, 1978. A judge of the Superior Court dismissed the insurer's complaint and the insurer appealed. The Appeals Court saw "no reason to deny compensation because the diminution of earning capacity [was] concealed by the longer hours worked." *Sjoberg's Case, supra* at 3-4. The Appeals Court held that "the award for impaired earning capacity under G. L. c. 152, § 35, was not 'tainted by error of law.' *Haley's Case,* 356 Mass. 678, 680 (1970)." *Sjoberg's Case, supra* at 4.

The insurer raises three issues on appeal: first, that the award to the employee of $40 per week in partial compensation was excessive; second, that there was no medical evidence before the board to warrant a finding that the employee was disabled after May 7, 1979; and, third, that the trial court erred in its computation of interest due the employee on the judgment. We address each argument in turn.

The insurer contends that an award of partial compensation is controlled by the actual postinjury earnings of the employee and cannot exceed the difference between the prior average weekly wage and the amount he earns. According to the insurer, the Massachusetts Workers' Compensation Act is "based on the wage-loss-replacement principle." Thus, the insurer concludes that the language of G. L. c. 152, § 35, must be strictly construed to mean that "earnings by the employee exceeding his average weekly wage preclude partial compensation benefits."

We reject this reasoning. The Legislature has not specified a method for computing "the average weekly wage [the employee] is able to earn thereafter." G. L. c. 152, § 35. In deciding whether the board erred, we must be "mindful of the deference due the [board's] specialized knowledge, technical competence, and experience, regarding issues within the scope of [its] statutorily delegated authority." *Workers' Compensation Rating & Inspection Bureau of Mass.* v. *Commissioner of Ins.,* 391 Mass. 238, 246 (1984).

When the employee resigned in October, 1978, he was earning in excess of eight dollars an hour and worked some thirty-seven hours a week for an average weekly wage of $302.31. In 1981, he was earning $4.50 an hour and worked over fifty hours a week for an average weekly wage of $317.48. The board interpreted the language of G. L. c. 152, § 35, as necessitating the exclusion of the overtime hours worked by the employee after his injury in determining his capacity for work. "[U]nder the statute, G. L. c. 152, § 35, it is not the wages actually earned after the injury that are the basis of deciding the earning capacity. . . . [The employee] is to be paid for the loss of earnings caused by the injury . . . ." *Korobchuk's Case,* 277 Mass. 534, 536 (1931). See *Nowak's Case,* 2 Mass. App. Ct. 498, 500 (1974). The board properly could find that the employee had "a significant impairment of earning capacity concealed within an income equal to his former wage" by virtue of his "working long hours at a lower hourly rate . . . ." L. Locke, Workmen's Compensation § 343, at 402 (1981). Thus, it was not error for the board to conclude that overtime payments, income from special projects, or income derived from nonemployment sources should not be included in the employee's postinjury "average weekly wage."[2]

This result was prefigured in earlier decisions of this court in which we acknowledged several instances in which postinjury earnings were artificially inflated so as to mask the claimant's true impairment of earning capacity. In *Shaw's Case,* 247 Mass. 157 (1923), the employee's postinjury earnings were supplemented by a gratuity from his employer; in *Sensk's Case,* 247 Mass. 232 (1924), the employee raised his post-

---

[2] One commentator has stated the principle as follows: The test is "one of capacity. If the legislature had spoken of the wages 'he has earned thereafter,' or even the wages 'he has been able to earn thereafter,' the comparison of actual wage with actual wage would be indicated. But the concept of wages he 'is able' to earn cannot mean definite actual wages alone, especially in the absence of a fixed period of time within which post-injury wages are to be taken as controlling." 2 A. Larson, Workmen's Compensation § 57.21 (1983). See *Whyte* v. *Indus. Comm'n,* 71 Ariz. 338, 343 (1951); *Davis* v. *C.F. Braun & Co.,* 170 Kan. 177, 181-182 (1950); *Batte* v. *Stanley's,* 70 N.M. 364, 369 (1962).

injury earnings by begging in the streets; in *Federico's Case,* 283 Mass. 430 (1933), the claimant, a partner in a contracting firm, received income in part from invested capital. In each case, we held the claimant entitled to partial compensation despite the seemingly undiminished earnings.

The result reached by the board is consistent with case law from other jurisdictions interpreting statutory provisions which are substantially similar to G. L. c. 152, § 35. "It is uniformly held . . . without regard to statutory variations in the phrasing of the test, that a finding of disability may stand even when there is evidence of some actual post-injury earnings equaling or exceeding those received before the accident. The position may be best summarized by saying that actual post-injury earnings will create a presumption of earning capacity commensurate with them, but the presumption may be rebutted by evidence independently showing incapacity or explaining away the post-injury earnings as an unreliable basis for estimating capacity. Unreliability of post-injury earnings may be due to a number of things; increase in general wage levels since the time of accident; claimant's own greater maturity or training; *longer hours worked by claimant after the accident*; payment of wages disproportionate to capacity out of sympathy to claimant; and the temporary and unpredictable character of post-injury earnings." 2 A. Larson, Workmen's Compensation § 57.21, at 10-79 - 10-100 (1983) (citations omitted) (emphasis added).

Several courts have interpreted the applicable workers' compensation statutes to require the exclusion of extraneous factors in determining partial compensation for impaired earning capacity. See, e.g., *Goodyear Tire & Rubber Co.* v. *Downey,* 266 Ala. 344 (1957); *Goodyear Tire & Rubber Co.* v. *Corfman,* 424 So. 2d 1326 (Ala. Civ. App. 1982); *Hewing* v. *Peter Kiewit & Sons,* 586 P.2d 182 (Alaska 1978); *Arizona Pub. Serv. Co.* v. *Industrial Comm'n,* 16 Ariz. App. 274 (1972); *Ruddy* v. *I.D. Griffith & Co.,* 237 A.2d 700 (Del. 1968); *Maxey* v. *Major Mechanical Contractors,* 330 A.2d 156 (Del. Super. 1974); *Fermo* v. *Superline Prods.,* 175 Mont. 345 (1978).

Other courts specifically have held that postinjury earnings must be adjusted appropriately to reflect overtime hours worked. See, e.g., *Arizona Pub. Serv. Co.* v. *Industrial Comm'n*, 16 Ariz. App. at 278; *Devlin* v. *Iron Works Creek Constr. Corp.*, 164 Pa. Super. 481, 485-486 (1949). See also *Reukauf* v. *Mobil Oil Corp.*, 44 A.D.2d 856 (N.Y. 1974) (where claimant's pre- and post-injury weekly earnings fluctuated due to overtime, board must select "reasonable period" and average earnings); *Franklin County Coal Corp.* v. *Industrial Comm'n*, 398 Ill. 528 (1947) (overtime earnings excluded from computation by statute). Cf. *Texas Employers' Ins. Ass'n* v. *Wilson*, 563 S.W.2d 685 (Tex. Ct. App. 1978) (finding of total and permanent incapacity not precluded by fact of employee's working substantial overtime hours after injury due to economic necessity). Contra *Reeves* v. *Echota Cotton Mills*, 123 Ga. App. 649 (1971) (claimant not entitled to partial compensation under statute because postinjury earnings exceeded pre-injury wages, despite his working longer hours at lower rate).

The language of G. L. c. 152, § 35, permits a construction that "it is only by the elimination of all variables except the injury itself that a reasonably accurate estimate can be made of the impairment of earning capacity attributable to the injury." *Arizona Pub. Serv. Co.* v. *Industrial Comm'n*, 16 Ariz. App. 274, 277 (1972) (interpreting a provision similar to G. L. c. 152, § 35). We conclude that the board was correct in its view that it was not required "to offset loss due to physical impairment by earnings attributable solely to claimant's having worked more hours per week" and that "[o]vertime worked after the injury should be omitted from consideration if overtime was not included in the calculation of the preinjury wage basis." 2 A. Larson, *supra* § 57.33, at 10-152 - 10-153. A determination to the contrary would "reward the idle and punish the ambitious." *Emerson* v. *Director of the Div. of Employment Sec.*, 393 Mass. 351, 353 (1984).

The insurer next urges that there was no medical evidence to establish the employee's disability after May 7, 1979. We disagree. The record included several medical reports. On

May 18, 1979, the employee was diagnosed as suffering a "[c]hronic sprain, right sacro iliac joint." Prior to May, 1979, a physician had diagnosed a "previous prolapse of lumbar disc" with a "guarded" prognosis. Further, the employee testified before the single member that he engaged in an exercise program for his back one-half hour a day as prescribed, that his back remained sore, and that he continued to be bothered by protracted sitting. "It is well settled that the decision of the board is 'to be accepted as final if . . . supported by the evidence, including all rational inferences which could be drawn therefrom, and if not tainted by error of law.' *Foley's Case,* 358 Mass. 230, 232 (1970). See *Frennier's Case,* 318 Mass. 635, 638-639 (1945). 'It is the exclusive function of the board to consider and weigh the evidence and to ascertain and settle the facts. Any contention that the board ought to have made contrary findings is unavailing if the findings made are not without sufficient evidentiary support,' *Chapman's Case,* 321 Mass. 705, 707 (1947)." *McEwen's Case,* 369 Mass. 851, 853 (1976). We conclude that there was such evidence to support the board's finding of partial disability.

Last, the insurer argues that the judge erred in awarding interest on the entire amount due at the issuance of the judgment for the period from the date the employee filed his claim to the date of judgment. We agree. "Whenever [sums due the employee or his dependents as compensation] include weekly payments, interest shall be computed on each unpaid weekly payment." G. L. c. 152, § 50, as amended by St. 1982, c. 183, § 1. We, therefore, remand this case to the Superior Court for computation of interest at six percent[3] on "each unpaid weekly payment" from the time it became due. The judgment entered

---

[3] The interest rate to be applied under G. L. c. 152, § 50, is that in effect at the time the employee files his claim. In this case, the effective rate on November 24, 1978 — the filing date — was six percent per annum. The Legislature has twice increased the interest rate under G. L. c. 152, § 50, since 1978, but has stated that the increased rates are prospective only. Thus, the figure to be used here is six percent. See St. 1980, c. 322, §§ 1, 3; St. 1982, c. 183, §§ 1, 4.

by the judge of the Superior Court is otherwise affirmed. Costs and reasonable expenses under G. L. c. 152, § 11A, inserted by St. 1945, c. 444, as amended, shall be allowed by the single justice.

*So ordered.*