H. SCOTT HARRIS, JR., EMPLOYEE, PLAINTIFF-APPELLEE v. NORTH AMERICAN PRODUCTS, EMPLOYER; AND TRAVELERS INSURANCE CO., CARRIER, DEFENDANT-APPELLANTS

No. COA96-409

(Filed 18 February 1997)

1. **Workers' Compensation § 191 (NCI4th)— hard metal restrictive lung disease—occupational disease—simultaneous employment**

The Industrial Commission applied the correct legal standard in determining that defendants were liable for compensation for plaintiff's occupational disease where the plaintiff suffered from pneumoconiosis, or hard metal restrictive lung disease, and the Commission found that defendant suffered from a compensable occupational disease caused by his employment as a brazier and machine operator by defendant North American Products. The evidence presented at the hearing was insufficient to show that plaintiff's restrictive lung disease was augmented by his subsequent employment at a chicken house so as to constitute a last injurious exposure.

**Am Jur 2d, Workers' Compensation § 328.**

## 2. Workers' Compensation § 259 (NCI4th)— pneumoconiosis—temporary partial disability—wage rate—more hours

The Industrial Commission did not err in awarding plaintiff temporary partial disability benefits from the time he became unable to continue his employment with North American due to his lung disease until he obtained employment at wages equal to or greater than those which he was earning at the time of his injury, even though his weekly income was approximately the same during the interval due to his working more hours. N.C.G.S. § 97-2(9).

**Am Jur 2d, Workers' Compensation § 381.**

Appeal by defendants from opinion and award of the North Carolina Industrial Commission entered 9 November 1995. Heard in the Court of Appeals 7 January 1997.

*Pressly, Thomas & Conley, P.A., by Gary W. Thomas, for plaintiff-appellee.*

*Cranfill, Sumner & Hartzog, L.L.P., by William J. Garrity, for defendant-appellants.*

MARTIN, John C., Judge.

Defendants North American Products, the employer, and Travelers Insurance Company, the carrier, appeal from an opinion and award of the Industrial Commission awarding plaintiff benefits for temporary partial disability due to an occupational disease. Plaintiff sought benefits for pneumoconiosis, or hard metal restrictive lung disease allegedly caused by his employment at North American Products. Defendants denied liability.

Evidence before the deputy commissioner tended to show that plaintiff had begun working at the Showell chicken house in late 1977 or early 1978 and worked there seven days per week. After finishing school, plaintiff also began working at the Perdue chicken house and worked at both chicken houses seven days per week for ten to twelve hours per day. In October 1984, plaintiff began working for defendant North American Products and, sometime thereafter, stopped working at the Showell chicken house. He continued, however, working at the Perdue chicken house seven days per week from 7:00 a.m. until 2:00 p.m.

When plaintiff began working at North American Products he was a healthy two hundred pound man with no respiratory problems. In April 1985 he became a brazier and machine operator at North American Products. His job involved welding carbide onto a saw blade and then grinding the carbide down. The grinding process used a diamond wheel which had water and coolant running over it. The grinding process created a greenish-black mist, some of which was airborne and some of which would go down into the machine. Typically, after plaintiff operated the grinding machine, his clothes would be black from the residue. Additionally, any time he would blow his nose the product would be black. The ventilation systems did not work and no masks were worn.

Plaintiff testified that in mid-1989 he began to notice shortness of breath and weight loss. His breathing did not worsen while he was working at the chicken house; it remained the same. The chicken houses were well ventilated and had an air conditioning system which sucked up most of the dust and feathers. Plaintiff stopped working at North American in January 1990, and thereafter his breathing improved and he regained his lost weight.

Plaintiff's physician, Dr. Haponik, a specialist in pulmonary medicine, testified that plaintiff suffered from a restrictive ventilatory defect. His lungs were restricted and his lung capacity was diminished to about 50 or 60 percent of normal. In Dr. Haponik's opinion, plaintiff's exposure to the metals in connection with his work at North American placed him at an increased risk of contracting the condition and was the major factor in causing the condition, although exposure to airborne irritants in the chicken houses could be potentially injurious. Dr. Haponik felt, however, that the poultry exposures would manifest themselves as obstructive, rather than restrictive.

While plaintiff worked at North American Products his average weekly wage was $361.60, and he worked a forty hour work week. After leaving his employment at North American, plaintiff was employed by Jantzen, Inc., as a mechanic on knitting machines, where his hourly wage was less than he had made at North American, but his average weekly wage was approximately the same because he worked fifty hours per week. In April 1991, plaintiff became employed by Hibco Plastics, as a band saw operator, also at an hourly rate less than he had made at North American. In October 1991, plaintiff's wage at Hibco was reduced due to a layoff. In July 1993, he secured employment at ASMO as a molding machine op-

erator at a pay rate of $9.30 per hour, more than he had made at North American.

The deputy commissioner found that plaintiff suffered from a compensable occupational disease and awarded him benefits for temporary partial disability for the period from January 1990, when he left his employment with North American, through July 1993, when he secured the higher paying job with ASMO, and medical expenses. Defendants appealed to the Full Commission. By an opinion and award filed 9 November 1995, the Full Commission found that defendant had not shown good cause to reconsider the evidence, to receive further evidence, or to amend the deputy commissioner's award. The Full Commission adopted the deputy commissioner's findings of fact and concluded that plaintiff suffered from a compensable occupational disease as a result of which he was entitled to compensation for temporary partial disability at the rate of "sixty-six and two-thirds percent of the difference between his average weekly wages [at North American] and the average weekly wages while employed at Jantzen and Hibco." Defendants appeal to this Court.

By the assignments of error brought forward in their brief, defendants present two questions: (1) whether the Commission should have determined that plaintiff's employment at the chicken houses after he had terminated his employment at North American Products was a last injurious exposure to the hazards of his lung disease, and (2) whether the Commission erred in finding that plaintiff had diminished earning capacity as a result of his lung disease so as to be entitled to benefits for temporary partial disability. For the following reasons, we affirm the opinion and award of the Full Commission.

[1] The standard of appellate review of an opinion and award of the Industrial Commission is limited to whether there was any competent evidence before the Commission to support its findings of fact and whether the findings of fact justify the Commission's legal conclusions and decision. *Pittman v. Thomas & Howard*, 122 N.C. App. 124, 129, 468 S.E.2d 283, 285-86, *disc. review denied*, 343 N.C. 513, 472 S.E.2d 18 (1996) (citations omitted). The Commission's findings "will not be disturbed on appeal if supported by any competent evidence even if there is evidence in the record which would support a contrary finding." *Peoples v. Cone Mills Corp.*, 316 N.C. 426, 432, 342 S.E.2d 798, 803 (1986). The Commission, and not this Court, is "the sole judge of the credibility of witnesses" and the weight given to

their testimony. *Pittman,* at 129, 468 S.E.2d at 286, quoting *Russell v. Lowes Product Distribution,* 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993).

The Commission found "[t]here is insufficient evidence of record to prove by its greater weight that the level of airway irritants to which plaintiff was exposed in his work in the chicken houses caused or augmented his lung disease." Defendants assign error, contending the Commission should have found that plaintiff's continued employment at the chicken houses after he had terminated his employment at North American Products was a last injurious exposure to the hazards of hard metal restrictive lung disease. Under our workers' compensation scheme, where compensation is payable for an occupational disease, liability falls upon the employer in whose employment the employee was last injuriously exposed to the hazard of the disease, and its insurer at the time of the exposure. N.C. Gen. Stat. § 97-57 (1991). It is not necessary that the exposure to the hazard either caused or significantly contributed to the development of the occupational disease; it is enough if the exposure augmented the disease process. *Neal v. Leslie Fay, Inc.,* 78 N.C. App. 117, 336 S.E.2d 628 (1985).

Dr. Haponik diagnosed plaintiff with a restrictive ventilatory defect, specifically pneumoconiosis, or hard metal disease, and testified that plaintiff was at an increased risk for developing this disease over members of the general public due to the work environment at North American Products. However, he distinguished plaintiff's exposure to airway irritants at the chicken house as being potentially causative of an obstructive ventilatory defect, such as asthma, which could affect plaintiff's flare-ups and symptoms, but would not be causative of a restrictive ventilatory defect. Dr. Haponik was not asked for, and did not offer, his opinion as to whether the exposure to antigens in the chicken houses could aggravate or accelerate the restrictive lung condition. Moreover, plaintiff testified that he worked in chicken houses for seven years with no problems and then developed breathing problems and sudden weight loss after becoming employed at North American Products. His condition improved after he stopped work at North American, even though he continued to work at the chicken houses. We agree with the Commission that the evidence is insufficient to show that plaintiff's restrictive lung disease was augmented by his employment at the chicken houses so as to constitute a "last injurious exposure," and we conclude that the Commission applied the correct legal standard in determining that

defendants are liable for compensation for plaintiff's occupational disease.

**[2]** Defendant's second contention is that the Commission erred in awarding plaintiff benefits for temporary partial disability pursuant to G.S. § 97-30 for the period from January 1990 through July 1993. Specifically, defendant argues that there is no competent evidence to support a finding that plaintiff had a diminished wage earning capacity as the result of his lung disease.

The term "disability" means "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." N.C. Gen. Stat. § 97-2(9). "To support a conclusion of disability, the Commission must find: (1) that the plaintiff was incapable after his injury of earning the same wages he earned before his injury in the same employment, (2) that the plaintiff was incapable after his injury of earning the same wages he earned before his injury in any other employment and (3) that the plaintiff's incapacity to earn was caused by his injury." *Daughtry v. Metric Construction Co.*, 115 N.C. App. 354, 357, 446 S.E.2d 590, 593, *disc. review denied*, 338 N.C. 515, 452 S.E.2d 808 (1994), quoting *Hendrix v. Linn-Corriher Corp.*, 317 N.C. 179, 186, 345 S.E.2d 374, 378-79 (1986). If the Commission makes these findings, and they are supported by competent evidence, they are conclusive on appeal even though there is evidence to support a contrary finding. *Donnell v. Cone Mills Corp.*, 60 N.C. App. 338, 299 S.E.2d 436, *disc. review denied*, 308 N.C. 190, 302 S.E.2d 243 (1983). A claimant who is able to work and earn some wages, but less than the wages earned at the time of injury, is partially disabled. *Calloway v. Shuford Mills*, 78 N.C. App. 702, 338 S.E.2d 548 (1986). Disability is a legal conclusion and will be binding on the reviewing court if supported by proper findings. *Id.*

G.S. § 97-30 provides that during the period of such partial disability the employer shall pay to the injured employee a weekly compensation equal to 66 2/3 percent of the difference between his average weekly wages before the injury and the average weekly wages which he is able to earn thereafter. The burden is on the employee to prove his incapacity to earn, as a result of the compensable injury, the same wages he was earning at the time of the injury. *Hill v. DuBose*, 234 N.C. 446, 67 S.E.2d 371 (1951).

In this case, the evidence showed that plaintiff's hourly wage after he terminated his employment at North American due to his

lung impairment was less than he had earned at North American; however, his weekly income was approximately the same as pre-injury due to his working more hours post-injury. The evidence presents the issue of whether factors other than actual post-injury earnings may be considered in determining an injured employee's post-injury earning capacity.

It is uniformly held that while an injured employee's post-injury wages may create a presumption of post-injury earning capacity, the presumption may be rebutted by either party upon a showing that such wages are an unreliable basis for determining the employee's actual earning capacity. 1C A. Larson, Workmen's Compensation Law, § 57.21(d) (1996). North Carolina follows this rule. *See Peoples v. Cone Mills Corp.*, 316 N.C. 426, 436, 342 S.E.2d 798, 805 (1986) ("Also to be taken into consideration is whether the post-injury earnings are a proper index of the employee's earning capacity or whether the amount of such earnings truly reflects other considerations which may exaggerate such capacity and be only of a temporary nature"); *Saums v. Raleigh Community Hospital*, 124 N.C. App. 219, 476 S.E.2d 372 (1996) (employee's post-injury earnings create presumption of commensurate earning capacity which may be rebutted by evidence of other factors); *Daughtry v. Metric Construction Co., supra* (court found evidence of one temporary job insufficient to show plaintiff was capable of earning $12 per hour post-injury); *Tyndall v. Walter Kidde Co.*, 102 N.C. App. 726, 403 S.E.2d 548, *disc. review denied*, 329 N.C. 505, 407 S.E.2d 553 (1991) (either party may show that post-injury earnings are an unreliable basis for determination of post-injury earning capacity).

Other jurisdictions have likewise considered the issue and have held that factors other than actual post-injury earnings may be considered in determining whether an injured employee's post-injury earning capacity has been diminished due to the injury. *Sjoberg's Case*, 394 Mass. 458, 476 N.E.2d 196 (1985) arose upon facts very similar to those before us in the present case. The employee's average weekly wage at the time of his injury was $302.31. He obtained various jobs after his resignation and at one point, working over 50 hours per week, his average weekly wage was $317.48, although he earned less per hour than at the time of injury. The Massachusetts Legislature had not specified a method for computing post-injury average weekly wage. Citing Larson and cases from other jurisdictions, the Massachusetts Supreme Court held that it was not error for the board to conclude that overtime

payments should not be included in the employee's post-injury average weekly wage.

> It is uniformly held . . . without regard to statutory variations in the phrasing of the test, that a finding of disability may stand even when there is evidence of some actual post-injury earnings equaling or exceeding those received before the accident. The position may be best summarized by saying that actual post-injury earnings will create a presumption of earning capacity commensurate with them, but the presumption may be rebutted by evidence independently showing incapacity or explaining away the post-injury earnings as an unreliable basis for estimating capacity. Unreliability of post-injury earnings may be due to a number of things; increase in general wage levels since the time of the accident; claimant's own greater maturity or training; *longer hours worked by claimant after the accident*; payment of wages disproportionate to capacity out of sympathy to claimant; and the temporary and unpredictable character of post-injury earnings.

394 Mass. at 462, 476 N.E.2d at 198-99 (citations omitted) (emphasis added). *See* 1C A. Larson, Workmen's Compensation Law, § 57.33(c) (1996). The court also reasoned that a holding to the contrary would "reward the idle and punish the ambitious." *Sjoberg's Case* at 463, 476 N.E.2d at 199.

In this case, evidence before the Commission showed that plaintiff worked for a number of employers after developing his lung disease and earned a lower hourly wage than with defendant, and that, due to his restrictive ventilatory defect, he was no longer able to work at his previous employment with defendant or at any other employment where he was exposed to metals or airway irritants. During this period plaintiff was unable to produce, by working the same number of hours as he was working at the time of his injury, the same average weekly earnings as at the time of his injury. Had the Commission considered plaintiff's post-injury earnings alone, without regard to the number of hours he was required to work to produce those earnings, plaintiff's capacity to earn would have been exaggerated. Therefore the evidence showed that plaintiff's actual post-injury earnings were not a reliable indicator of his post-injury earning capacity and the Commission properly determined that, during such period, plaintiff was partially disabled. Accordingly, we affirm the decision of the Commission awarding plaintiff temporary partial disability benefits from January 1990, when he became unable

to continue his employment with North American due to his lung disease, until July 1993, when he obtained employment at wages equal to or greater than those which he was earning at the time of his injury.

Affirmed.

Judges EAGLES and GREENE concur.