MARIE DEROSIER, EMPLOYEE, PLAINTIFF v. WNA, INCORPORATED/IMPERIAL FIRE HOSE COMPANY, EMPLOYER; AND THE TRAVELERS INSURANCE COMPANY, CARRIER, DEFENDANTS

No. COA01-72

(Filed 2 April 2002)

**Workers' Compensation— calculation of disability—overtime available in new job**

  A workers' compensation disability award was remanded where plaintiff had worked after the accident in a position with defendant which did not provide as much overtime and the Commission found that plaintiff had sustained a decrease in her earning capacity. Plaintiff's pre-injury earnings should not be compared with her post-injury earnings in another job because the circumstances of the pre-injury job had changed in that the plant had suffered a downturn which resulted in a plant-wide reduction in overtime. The proper comparison should be between the amount of overtime available to the person currently in plaintiff's former postion and the overtime available to plaintiff in her new position.

  Judge GREENE dissenting.

Appeal by defendants from opinion and award entered 7 September 2000 by Commissioner Christopher Scott of the North Carolina Industrial Commission. Heard in the Court of Appeals 4 December 2001.

*Devore, Acton & Stafford, P.A., by William D. Acton, Jr., for plaintiff appellee.*

*Hedrick, Eatman, Gardner & Kincheloe, L.L.P., by Paul C. Lawrence and Terry L. Wallace, for defendant appellants.*

McCULLOUGH, Judge.

Defendants WNA, Inc./Imperial Fire Hose, the employer, and Travelers Insurance Company, the carrier, appeal from an opinion and award by the North Carolina Industrial Commission awarding plaintiff Marie Derosier permanent partial disability benefits pursuant to N.C. Gen. Stat. § 97-30 (1999).

On 3 October 1996 plaintiff slipped and fell down a flight of steps while at work. The steps beneath her gave way, and plaintiff suffered a leg laceration and back strain due to the accident. Defendant WNA, Inc./Imperial Fire Hose filed a Form 60 with the Industrial Commission on 25 October 1996, admitting plaintiff's right to compensation and paid plaintiff temporary total disability benefits.

Plaintiff, prior to her accident, was assigned to what is called a "floater" position in the weave department at work at the time of the accident. A floater performs many different tasks as needed around the department. Plaintiff earned $10.50 per hour and $15.75 per overtime hour as a floater. She averaged 17.93 hours of overtime per week.

Plaintiff reached maximum medical improvement on 6 March 1998. Plaintiff had been given a lifting restriction of 25 pounds and limited bending, stooping and squatting. Her doctor gave her a 2% permanent partial disability rating. These permanent restrictions prevented plaintiff from performing the duties of a floater.

Plaintiff did not return to work until 8 March 1997. She worked part-time from then through 28 September 1997, during which time she received temporary partial disability benefits from defendants. When she returned, plaintiff was assigned to the Quality Control Department as a lab technician because she could no longer perform the job of floater due to her restrictions. However, plaintiff earned the exact same wages as a lab technician as she did when she was a floater. Plaintiff's wages were also the exact same as the present floater, Sheila DeMarco.

Sheila DeMarco replaced plaintiff as floater. As said above, Ms. DeMarco's hourly wage and plaintiff's hourly wage were identical when plaintiff returned to work. Evidence in the record showed that Ms. DeMarco worked 436.5 hours of overtime during the period between January 1998 through September 1999. During the same period, plaintiff worked 257.5 hours of overtime as a lab technician. This averages out to 13.23 hours per week. Not only is this average significantly less than what plaintiff averaged as a floater before she was injured, 17.93 hours per week, but is also less than the present floater. The record shows that the floater position worked 179 more overtime hours than did the position of lab technician during the same time period.

The Industrial Commission found as a fact that plaintiff's job in the Quality Control Department "afforded her fewer opportunities to work overtime." Consequently, plaintiff's earning capacity decreased. Finding of Fact #8 reads:

8. The evidence of record establishes that plaintiff's decrease in earnings following her injury by accident was due to her having to work in defendant-employer's Quality Control Department as the result of her restrictions, which afforded her fewer opportunities to work overtime and thus decreased her earning capacity.

The Commission made the conclusion of law that "[p]laintiff sustained a decrease in earning capacity due to her admittedly compensable injury by accident." The award read, in pertinent part, as follows:

1. Subject to attorney's fees hereinafter provided, defendants shall pay to plaintiff weekly compensation pursuant to G.S. § 97-30 in an amount equal to sixty-six and two-thirds percent of the *difference between her average weekly wages at the time of her injury and the average weekly wages which she has been and is able to earn thereafter* until 300 weeks from the date of the injury.

(Emphasis added.) Defendant appeals from this opinion and award.

Defendant makes several assignments of error as to the opinion and award, but the sole question presented is whether the Industrial Commission erred in awarding plaintiff benefits pursuant to N.C. Gen. Stat. § 97-30.

Standard of Review

The standard for appellate review of an opinion and award of the Industrial Commission is well settled. Review "is limited to a determination of (1) whether the findings of fact are supported by competent evidence, and (2) whether the conclusions of law are supported by the findings." *Barham v. Food World*, 300 N.C. 329, 331, 266 S.E.2d 676, 678 (1980); *see also Calloway v. Memorial Mission Hosp.*, 137 N.C. App. 480, 484, 528 S.E.2d 397, 400 (2000); *Shah v. Howard Johnson*, 140 N.C. App. 58, 61, 535 S.E.2d 577, 580 (2000), *disc. review denied*, 353 N.C. 381, 547 S.E.2d 17 (2001).

In addition, "so long as there is some 'evidence of substance which directly or by reasonable inference tends to support the findings, this Court is bound by such evidence, even though there is evidence that would have supported a finding to the contrary.' " *Id.* at 61-62, 535 S.E.2d at 580 (quoting *Porterfield v. RPC Corp.*, 47 N.C. App. 140, 144, 266 S.E.2d 760, 762 (1980)). The *Calloway* Court went further stating that "our task on appeal is not to weigh the respective evidence but to assess the *competency* of the evidence in support of the Full Commission's conclusions." *Calloway*, 137 N.C. App. at 486, 528 S.E.2d at 401.

I.

Defendants contend that the Industrial Commission erred by awarding plaintiff benefits pursuant to N.C. Gen. Stat. § 97-30 in that there is no competent evidence in the record to support its findings of fact and conclusions of law that plaintiff sustained a decrease in earning capacity due to her injury.

The term "disability" means "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." N.C. Gen. Stat. § 97-2(9). "To support a conclusion of disability, the Commission must find: (1) that the plaintiff was incapable after his injury of earning the same wages he earned before his injury in the same employment, (2) that the plaintiff was incapable after his injury of earning the same wages he earned before his injury in any other employment and (3) that the plaintiff's incapacity to earn was caused by his injury." If the Commission makes these findings, and they are supported by competent evidence, they are conclusive on appeal even though there is evidence to support a contrary finding. A claimant who is able to work and earn some

wages, but less than the wages earned at the time of injury, is partially disabled. Disability is a legal conclusion and will be binding on the reviewing court if supported by proper findings.

*Harris v. North American Products*, 125 N.C. App. 349, 354, 481 S.E.2d 321, 324 (1997). The burden is on the employee to prove his incapacity to earn, as a result of the compensable injury, the same wages he was earning at the time of the injury. *Hall v. Thomason Chevrolet, Inc.*, 263 N.C. 569, 575, 139 S.E.2d 857, 861 (1965).

Defendant correctly points out that "although the Plaintiff's post-injury earnings were less than her pre-injury earnings, the focus should be on the issue of whether Plaintiff's earning capacity or power has been diminished." Our Supreme Court has held that "[c]ompensation must be based upon loss of wage earning power rather than the amount actually received. It was intended by the statute to provide compensation only for loss of earning capacity." *Hill v. DuBose*, 234 N.C. 446, 447-48, 67 S.E.2d 371, 372 (1951).

In support of its contention that the Industrial Commission erred, defendants contend that its economic downturn evidence negates the pre-injury wage and post-injury wage comparison as being the proper way to determine earning capacity in this case. "It is uniformly held that while an injured employee's post-injury wages may create a presumption of post-injury earning capacity, the presumption may be rebutted by either party upon a showing that such wages are an unreliable basis for determining the employee's actual earning capacity. North Carolina follows this rule." *Harris,* 125 N.C. App. at 355, 481 S.E.2d at 325 (citation omitted).

The *Harris* case dealt with an employee who became sick on the job due to conditions on the site. Once he left that job and found other work, his hourly wage went down but his income went up because of the hours he was working. Rather than holding that the employee suffered no loss of earning capacity, this Court concluded that the evidence showed that the plaintiff-employee's actual post-injury earnings were not a reliable indicator of his post-injury earning capacity. The Court said:

> [T]he presumption [of post-injury earning capacity] may be rebutted by evidence independently showing incapacity or explaining away the post-injury earnings as an unreliable basis for estimating capacity. Unreliability of post-injury earnings may be due to a number of things[:] increase in general wage levels

since the time of the accident; claimant's own greater maturity or training; *longer hours worked by claimant after the accident*; payment of wages disproportionate to capacity out of sympathy to claimant; and the temporary and unpredictable character of post-injury earnings."

*Harris*, 125 N.C. App. at 356, 481 S.E.2d at 325 (quoting *Sjoberg's Case*, 394 Mass. 458, 462, 476 N.E.2d 196, 198-99 (1985) (citations omitted)).

In the present case, defendant contends that "plaintiff's inflated pre-injury wages due to overtime hours worked during a period of economic stability and the subsequent downturn by the plant which resulted in a plant-wide reduction of overtime hours available explains the disparity in plaintiff's pre-injury wages and her post-injury wages." In other words, plaintiff's decrease in wages was not caused by her injury by accident, but due to the period of decline in the fire hose industry that coincided with her injury. According to defendants, the employee now filling the floater position has less overtime opportunities than were available in the previous years.

We agree with defendants that plaintiff's pre-injury earnings as floater should not be compared with plaintiff's post-injury earnings as a lab technician to determine her loss in earning capacity in this case. The Industrial Commission was wrong to compare pre-injury and post-injury earnings as to earning capacity in this case, because as defendants contend, circumstances surrounding the pre-injury position have changed. Even if she was still the floater, presumably she would not work the hours as she did before.

However, this conclusion does not necessarily mandate that plaintiff suffered no loss in earning capacity. It would seem that plaintiff would be harmed, if at all, in the following way: If she had not suffered the injury, she could still be working as a floater. That job apparently has a certain amount of overtime hours available to work. Since she was injured, she is now working as a lab technician that also has a certain amount of overtime hours available to the employee. If there is a difference between the hours of overtime available between present floater and present lab technician, then she has lost the capacity to earn those overtime hours. Thus, the proper comparison should be between the amount of overtime *available*, not *worked*, to the present floater and the plaintiff in her present job as lab technician.

The record does not allow such a comparison. The closest the record comes to making this comparison is with defendant's exhibits one and two. These exhibits are salary histories of Ms. Derosier and Sheila DeMarco during a specified period of time. They show the hours worked, regular and overtime, by each respective employee. The columns are clearly marked, and nowhere do they make reference to overtime hours available.

Testimony about these exhibits seems to confuse what they plainly represent. For instance, Sherrie Hutchinson, the personnel manager at Imperial Fire Hose, testified that the exhibits represented "1998 and 1999's year-to-date earnings, which include hours and overtime hours worked." When asked about the exhibit dealing with the present floater, Ms. DeMarco, Ms. Hutchinson testified that it represented "the hours available for a floater to work from that period of time 1998 through the end of August 1999." Finally, later on in Ms. Hutchinson's testimony, the following exchange in regard to the same two exhibits took place:

Q. These would be, in essence, a comparison of the overtime hours, if we follow the two columns for both of these people, we can compare the overtime hours Ms. Derosier worked with the overtime hours Ms. Demarco worked; is that right?

A. [Hutchinson]: Correct.

At the very least, it is confusing as to what exactly the records represent.

We do note that there is evidence in the record that Ms. Derosier has been allowed fewer overtime opportunities as a lab technician than as a floater:

Q. . . . And in the lab technician, have you been allowed to work as much overtime work as you had been offered before when you were a floater?

A. No, sir.

There is also evidence that, due to her injury, Ms. Derosier did not work every overtime hour available to her, even though her doctor never said she could not work the overtime. As said above, we hold that based on the facts of this case the proper comparison to arrive at Ms. Derosier's earning capacity is between the hours of overtime available to the present floater and the overtime available to plaintiff

in her present job as lab technician. The record does not provide such a comparison. Therefore we reverse the decision and remand for further findings consistent with this opinion.

Reversed and remanded.

Judge CAMPBELL concurs.

Judge GREENE dissents.

GREENE, Judge, dissenting.

In remanding this case to the Full Commission, the majority accepts defendants' position that plaintiff's post-injury overtime hours decreased due to an economic downturn experienced by the company. The majority therefore orders the Full Commission to compare the number of overtime hours available to the present floater, Ms. DeMarco, and those available to plaintiff in her post-injury job as a lab technician in order to determine whether plaintiff suffered a loss in earning capacity. Because I believe this analysis to be an issue that is only reached upon a finding by the Full Commission that defendants have met their burden under *Harris v. North Am. Prods.*, 125 N.C. App. 349, 481 S.E.2d 321 (1997), a finding the Full Commission did not make, I dissent.[1]

In *Harris*, this Court held that while an injured employee's post-injury wages create "a presumption of post-injury earning capacity, the presumption may be rebutted by either party upon a showing that such wages are an unreliable basis for determining the employee's actual earning capacity." *Id.* at 355, 481 S.E.2d at 325. In this case, defendants offered evidence that an economic downturn, resulting in an overall decrease in overtime, caused plaintiff's post-injury earnings to be reduced. The deputy commissioner found "competent evidence in the record . . . that [plaintiff's] decrease in earnings following her admittedly compensable injury by accident was due to her having to work in the defendant-employer's Quality Control Department which afforded her fewer opportunities to work overtime and thus decreased her earning capacity." On appeal to the Full Commission, Defendants assigned as error that this finding was "not supported by the competent evidence of [r]ecord in that the

---

1. Only if the Full Commission had found defendants to have met their burden of showing plaintiff's post-injury wages to be unreliable under *Harris* would the Full Commission have to compare available overtime as outlined in the majority opinion.

[d]eputy [c]ommissioner failed to take into account the economic downturn faced by the [d]efendant[-employer] and the effect of the economic downturn on [plaintiff's] ability to work overtime." The Full Commission, however, implicitly rejected defendants' argument by adopting the deputy commissioner's finding almost verbatim. As plaintiff has met her burden of proving a decrease in her earning capacity and defendants have failed to meet their burden of showing plaintiff's evidence to be unreliable, *see id.*, I would affirm the Full Commission's opinion and award.