JUNIOR REX TAYLOR, Plaintiff-Employee v. M. L. HATCHER PICK-UP AND
DELIVERY SERVICE, Defendant-Employer and LUMBERMENS MUTUAL
CASUALTY COMPANY, Defendant-Insurance Carrier

No. 7910IC803

(Filed 18 March 1980)

**1. Master and Servant § 93— workers' compensation—refusal to require independent physical examination**

   The Industrial Commission did not abuse its discretion in denying defendants' request that the Commission order plaintiff employee to submit to an independent physical examination pursuant to G.S. 97-27 where defendants made the request only after the hearing had been completed and defendants knew that the sole issue for determination at the hearing was the issue of plaintiff's permanent disability.

**2. Master and Servant §§ 72, 93.3— workers' compensation—permanent partial disability rating—competency of expert's testimony**

   The Industrial Commission did not err in considering a surgeon's testimony giving a 25% permanent partial disability rating to plaintiff's left hand where the surgeon testified that he "briefly" examined plaintiff just prior to the hearing, that his calibration of plaintiff's disability was on a "very subjective basis," and that if he had a longer time to evaluate plaintiff he did not think it would affect the 25% rating.

APPEAL by defendants from an opinion and award by the North Carolina Industrial Commission filed 15 May 1979. Heard in the Court of Appeals 5 March 1980.

It was stipulated that the parties were subject to the North Carolina Workmen's Compensation Act, that an employment relationship existed between plaintiff and defendant employer, that defendant Lumbermens Mutual Casualty Company was the "carrier on the risk;" that plaintiff's average weekly wage was $228.31; that on 14 June 1977 plaintiff sustained an injury by accident arising out of and in the course of his employment; that defendants admitted liability and the parties entered into an agreement for the payment of compensation for temporary total disability which was paid from the date of the accident until 27 September 1977. It was further stipulated that "The only issue for determination at this hearing is what additional compensation plaintiff may be entitled to receive for permanent disability of the left hand or disfigurement of such hand and for permanent disability or disfigurement of the left leg."

At the hearing on 19 June 1978 held before Chief Deputy Commissioner Shuford, Dr. James C. Fahl, stipulated by defendants as a medical expert specializing in surgery, testified on behalf of plaintiff. Dr. Fahl testified that he had treated plaintiff for injury to his left hand and left leg. The last time Dr. Fahl examined plaintiff prior to the hearing was 4 November 1977. At that time, plaintiff still had some stiffness in his wrist. Since it was only five months after the injury Dr. Fahl thought that there was a very good possibility that the stiffness would improve. For that reason, Dr. Fahl stated he was not prepared to give plaintiff a disability rating in the fall of 1977.

On the morning of the hearing on 19 June 1978 Dr. Fahl briefly examined plaintiff outside the hearing office with reference to giving plaintiff a disability rating. Based on that examination, Dr. Fahl testified that plaintiff had normal finger motion, still had stiffness in his wrist, lacked 40 degrees of elevation or extension of the wrist and had weakness in his grip. Dr. Fahl testified that he could give plaintiff a disability rating with reference to the injury to plaintiff's wrist and hand, but that it was an estimate since Dr. Fahl did not have his guides at the hearing and did not know what the percentages were. In response, Chief Deputy Commissioner Shuford handed Dr. Fahl a copy of the North Carolina Industrial Commission rating guide. Dr. Fahl testified that he had an opinion as to what percent of disability plaintiff sustained and that he would estimate approximately 25 percent disability to the wrist and hand. Dr. Fahl further testified that he was calibrating plaintiff's grip "on a very subjective basis." Defendant presented no evidence and the hearing was adjourned.

In a letter dated 26 June 1978 to the Chief Deputy Commissioner, defendants stated that they were " . . . completely unaware that Dr. Fahl was going to change his opinion with regard to the plaintiff-employee's permanent disability" in that Dr. Fahl had informed defendants that based on the 4 November 1977 examination Dr. Fahl was unaware of any permanent partial disability. Based on this change in opinion by Dr. Fahl and defendants' surprise at this change at the hearing, defendants requested the Chief Deputy Commissioner to enter an order pursuant to G.S. 97-27 requiring plaintiff to submit to an independent physical examination. In support of their position, defendants enclosed two

letters written by Dr. Fahl; one dated 11 April 1978 addressed to Mr. Blackwood, defendants' attorney; the other dated 8 February 1978 addressed to Mr. Smith, plaintiff's attorney. In both letters Dr. Fahl indicated that at the time of his examination of plaintiff on 4 November 1977, he had no reason to feel plaintiff would have any permanent disability.

On 10 July 1978 the Chief Deputy Commissioner denied defendants' request for an order pursuant to G.S. 97-27 and awarded plaintiff compensation based on his finding and conclusion that as a result of the injury by accident plaintiff has a 25% permanent partial disability in his left hand. Defendants appealed to the Full Commission and the Full Commission denied defendants' motion for an independent examination by another physician and adopted the decision of the Chief Deputy Commissioner. Defendants appealed.

*Tuggle, Duggins, Meschan, Thornton & Elrod, by Joseph E. Elrod III and Richard L. Vanore, for defendant-appellants.*

*Franklin Smith for plaintiff-appellee.*

MARTIN (Robert M.), Judge.

[1] Defendants contend the Industrial Commission erred in denying their request that the Industrial Commission order plaintiff employee to submit to an independent physical examination pursuant to G.S. 97-27. G.S. 97-27 provides in pertinent part:

> After an injury, and so long as he claims compensation, the employee, if so requested by his employer or ordered by the Industrial Commission, shall . . . submit himself to an examination, at reasonable times and places, by a duly qualified physician or surgeon designated and paid by the employer or the Industrial Commission.

The defendant correctly argues that the language of the statute is mandatory as to the employee. The employee "shall" submit himself to an examination if it is requested by an employer or ordered by the Industrial Commission. The language of the statute, however, imposes no mandatory obligation on the Industrial Commission to order an examination. When an employee requests the Commission to order an employee to submit to an

examination, whether the Commission grants or denies the employer's request is within the discretion of the Commission.

A similar question was decided in *Cabe v. Parker-Graham-Sexton, Inc.*, 202 N.C. 176, 162 S.E. 223 (1932) in which the Court considered whether the right to require an autopsy, granted to the employer and the Industrial Commission under G.S. 97-27, is a matter within the discretion of the Industrial Commission. In *Cabe*, defendant insurance carrier requested of the administrator of the deceased employee's estate the right to have an autopsy performed after deceased employee had been interred. The request was denied. There was no formal request made upon the Industrial Commission until the case was called for hearing. The Commission in its discretion denied defendants' motion for an autopsy and the exercise of the Commission's discretion was upheld by the Supreme Court.

In the present case, defendants knew that the sole issue for determination at the hearing was the issue of permanent disability. Defendants presented no evidence at the hearing. When asked by the court, "Anything for the defendants?", defendants replied, "No, Your Honor." Defendants did not make their request for an independent examination until after the hearing had been completed. Furthermore, defendants did not show that an independent examination by another physician would change the plaintiff's disability rating. The Commission was within its sound discretion in denying defendants' request.

[2] Defendants further contend that the Commission erred in failing to strike Dr. Fahl's testimony pertaining to the 25 percent permanent partial disability rating to plaintiff's left hand as without probative value. The Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony. The court may set aside findings of fact only on the ground they lack evidentiary support. The court does not have the right to weigh the evidence and decide the issue on the basis of its weight. The court's duty goes no further than to determine whether the record contains any evidence tending to support the finding. *Inscoe v. Industries, Inc.*, 292 N.C. 210, 215, 232 S.E. 2d 449, 452 (1977). In the case *sub judice*, Dr. Fahl was stipulated by defendants to be an expert witness. Dr. Fahl testified that he "briefly" examined the plaintiff and that his calibration of plain-

tiff's disability was on a "very subjective basis." Dr. Fahl also testified that if he had a longer time to evaluate plaintiff he did not think it would affect the 25 percent disability rating. The Commission did not err in weighing this testimony and deciding the issue of the percent of plaintiff's disability on the basis of its weight.

Affirmed.

Judges CLARK and ERWIN concur.