HALEY v. ABB, INC.

[174 N.C. App. 469 (2005)]

━━━━━━━━━━━

CHARLES HALEY, EMPLOYEE-PLAINTIFF v. ABB, INC., DEFENDANT-EMPLOYER, SELF INSURED (GALLAGHER BASSETT SERVICES, INC., SERVICING AGENT)

No. COA05-343

(Filed 15 November 2005)

**1. Workers' Compensation— sanctions and attorney fees— refusal to reinstate compensation and denial of psychological treatment**

The Industrial Commission properly awarded sanctions and attorney fees to a workers' compensation plaintiff based upon defendant's refusal to comply with an order to reinstate compensation and its denial of psychological treatment.

**2. Workers' Compensation— compensation prior to second evaluation—back condition as result of leg injury—evidence sufficient**

The Industrial Commission did not err by awarding workers' compensation prior to a second medical evaluation where defendant chose the treating doctor that gave plaintiff the disability rating. Further, there was credible evidence supporting the Commission's finding that plaintiff's back condition was a natural and probable result of his compensable leg injury.

**3. Workers' Compensation— average weekly wage—Commission's determination—sufficiency of evidence**

There was competent evidence in a workers' compensation case to support the Industrial Commission's determination of plaintiff's average weekly wage which included an amount for overtime.

**4. Workers' Compensation— vocational rehabilitation—release by treating physicians required**

The Industrial Commission did not abuse its discretion in a workers' compensation case by denying defendant's request for vocational rehabilitation until plaintiff is released by his treating physicians.

Appeal by defendant from an Opinion and Award entered 4 November 2004 by the North Carolina Industrial Commission. Heard in the Court of Appeals 19 October 2005.

*The Deuterman Law Group, PA, by Daniel L. Deuterman and Joel W. Davis, for plaintiff-appellee.*

*McGuireWoods, LLP, by Steven T. Ackermann, for defendant-appellant.*

BRYANT, Judge.

ABB, Inc. (defendant) appeals an Opinion and Award entered 4 November 2004 by the North Carolina Industrial Commission (Full Commission) awarding Charles Haley (plaintiff) temporary total disability compensation, temporary partial disability compensation and medical expenses incurred for the treatment of plaintiff's disability; and ordering defendant to pay plaintiff's attorney's fees and a sanction of $1,000.00 for failure to comply with the Workers' Compensation Rules.

*Facts and Procedural History*

On 29 January 2001 plaintiff sustained a compensable injury by accident to his right knee when he slipped off a pallet while working as a stock room attendant/receiving clerk for defendant. Defendant accepted liability for plaintiff's right knee injury by filing a Form 60 on 30 March 2001, wherein the carrier agreed to make temporary total disability payments based on the average weekly wage of $533.20, which yields a weekly compensation rate of $355.48. On 10 April 2001, defendant filed an amended Form 60 listing an average weekly wage for plaintiff of $1,097.44 which yields the maximum compensation rate for 2001 of $620.00 per week.

Plaintiff was initially treated by Dr. Robert Wainer, an orthopaedic surgeon. On 16 March 2001, Dr. Wainer performed knee surgery on plaintiff. Thereafter, plaintiff's condition deteriorated and he was subsequently diagnosed by Dr. Wainer as having developed

reflex sympathetic dystrophy (RSD). Dr. Wainer referred plaintiff to Dr. Lewis A. Koman at North Carolina Baptist Hospital for treatment of his RSD. .

Plaintiff underwent several diagnostic exams to determine the extent of his complex regional pain syndrome (CRPS), also referred to as RSD. The results of the diagnostic exams indicated plaintiff had an abnormal pain reaction and plaintiff was diagnosed by Dr. Koman as suffering from severe arthrofibrosis, or scar tissue in the knee joint, and CRPS in the right leg, secondary to the admittedly compensable knee injury of 29 January 2001. CRPS or RSD is a syndrome that includes pain which is usually out of proportion to the injury and includes autonomic dysfunction and functional impairment.

On 31 October 2001, plaintiff underwent a repeat arthroscopy performed by Dr. Gary Poehling. The second arthroscopy revealed very severe arthrofibrosis in plaintiff's right knee, which Dr. Koman felt was directly related in part to the severity of plaintiff's injury. Although the arthroscopy of 31 October 2001 restored some range of motion to plaintiff's leg, plaintiff continued to experience severe and disabling symptoms of CRPS. Plaintiff did not regain functional use of his right leg and remained on crutches.

On 16 January 2002, Dr. Koman found plaintiff unable to work and referred him for pain management. On 21 January 2002, Dr. Koman released plaintiff to sedentary work, restricted to sitting. Plaintiff was allowed to work half days for two weeks, for six hours per day in the third week, and full time in the fourth week.

Plaintiff returned to work with defendant on 26 January 2002 in a created shipping clerk position. This position normally required a worker to load trucks, attach labels and complete paperwork. However, in order to adhere to plaintiff's restrictions, plaintiff was only required to complete paperwork.

Dr. Koman continued to treat plaintiff and on 24 April 2002 Dr. Koman found plaintiff needed additional sympathetic block injections and referred plaintiff to a psychologist. On 24 May 2002 plaintiff was first examined by psychologist Dr. Timothy N. Webster. Dr. Webster initially evaluated plaintiff to determine whether or not plaintiff was a candidate for a spinal cord stimulator. Dr. Webster diagnosed plaintiff with major depression secondary to chronic pain and situational stressors. Dr. Webster found plaintiff to have no significant psychiatric history and found plaintiff to be credible based upon the testing he administered.

On 10 July 2002, Dr. Koman noted he did not feel plaintiff needed to remain sedentary, but felt plaintiff required a job that would accommodate his continued use of crutches. Dr. Koman did not feel plaintiff needed additional therapy, but felt plaintiff's continuing symptoms of pain needed to be addressed. On 8 August 2002, plaintiff was seen by psychiatrist Dr. Henry E. Branham. Dr. Branham diagnosed plaintiff with major depression, single episode, non-psychotic, secondary to chronic pain syndrome and RSD. A spinal cord stimulator was surgically installed by Dr. Stuart Meloy of Piedmont Pain Management in December 2002. The trial of the spinal cord stimulator was not successful and plaintiff was left with severe back pain at the site of the insertion of the device into his spinal cord.

In August of 2003 plaintiff was referred to Dr. Henry Ezell Branham, Jr. for a psychiatric evaluation. On 24 January 2003, Dr. Branham evaluated plaintiff and found plaintiff to be so profoundly depressed and suicidal that Dr. Branham wrote plaintiff out of work indefinitely. After receiving Dr. Branham's report Jean Bassett, defendant's rehabilitation nurse overseeing plaintiff's case, referred plaintiff to Dr. Webster for psychological counseling. Dr. Webster saw plaintiff on 31 January 2003, at which time he found plaintiff's depression was considerably worse and plaintiff was having suicidal thoughts. Dr. Webster found plaintiff's depression to be disabling.

On 20 February 2003, plaintiff was given a functional capacity evaluation and found to be capable of sedentary work for eight hours a day. Dr. Koman last saw plaintiff on 26 February 2003, at which time Dr. Koman assigned a 100% permanent impairment rating to plaintiff's right leg. Dr. Koman also placed plaintiff on permanent restrictions that included sedentary work only, lifting ten pounds maximum, and limited walking and standing with crutches only. Dr. Koman attributed the rating and restrictions to the limitation of motion in plaintiff's knee, the swelling, the previous surgeries, the decreased function, and plaintiff's inability to walk. Dr. Koman causally related the rating and restrictions to plaintiff's compensable injury of 29 January 2001. Dr. Koman released plaintiff to further care with pain management professionals and continued psychiatric treatment.

The Full Commission found that, as the result of the compensable injury by accident, plaintiff was totally disabled and unable to work in any employment from 18 March 2001 until he returned to work on 26 January 2002. Upon his return to work, plaintiff earned diminished wages and was paid temporary partial disability benefits from 26 January 2002 through 30 June 2002, in varying amounts equal to two-

thirds of the difference between plaintiff's average weekly wage of $1,097.40 and his actual earnings.

The Full Commission also found that defendant unilaterally and without explanation decided to terminate plaintiff's temporary partial disability benefits without seeking or receiving approval of the Commission. On 17 October 2002, the Commission issued an Order requiring defendant to pay plaintiff temporary partial disability, subject to a 10% penalty for all payments more than 14 days past due. Defendant did not timely file an appeal of this Order. At the time of the 30 April 2003 hearing before Deputy Commissioner Glenn, defendant had not made any additional temporary partial disability payments to plaintiff and had failed to comply with the Commission's Order of 17 October 2002.

As a result of the termination of plaintiff's benefits, plaintiff suffered financial hardship. The Full Commission found plaintiff's financial problems after April 2002 were the direct result of defendant's decision to terminate plaintiff's temporary partial disability benefits without approval of the Commission. Plaintiff's financial problems compounded and aggravated his depression resulting from the pain and disability of his compensable knee injury of 29 January 2001.

Plaintiff has remained out of work since 24 January 2003 under Dr. Branham's orders. The Full Commission found plaintiff has not reached maximum medical improvement and since 24 January 2003 has continued to be unable to work due to his disabling depression and the physical pain and disability caused by his admittedly compensable injury of 29 January 2001. The Full Commission found, based on the greater weight of the credible evidence, that plaintiff's depression and other psychological conditions are the proximate result of the pain associated with his compensable knee injury of 29 January 2001.

The Full Commission further found that plaintiff's back condition resulted from the implantation of the spinal cord stimulator and was a natural and probable result of the compensable injury by accident and resulting pain. The Full Commission awarded plaintiff temporary total disability compensation, temporary partial disability compensation, compensation for medical expenses incurred for the treatment of his disability, and ordered defendant to pay plaintiff's attorney's fees and a sanction of $1,000.00 for failure to comply with the Workers' Compensation Rules. Defendant appeals.

HALEY v. ABB, INC.

[174 N.C. App. 469 (2005)]

Defendant raises four issues on appeal: (I) whether the Full Commission erred in assessing sanctions and attorney's fees against defendant; (II) whether the Full Commission erred in awarding plaintiff compensation for his back and leg injuries prior to a second opinion evaluation; (III) whether the Full Commission accurately determined plaintiff's average weekly wage; and (IV) whether the Full Commission erred in finding defendant is not entitled to initiate vocational rehabilitation. For the following reasons, we affirm the Opinion and Award of the Full Commission.

### Standard of Review

Review by this Court of a decision by the North Carolina Industrial Commission is limited to the determination of "whether any competent evidence supports the Commission's findings of fact and whether [those] findings . . . support the Commission's conclusions of law." *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000). We note at the outset that defendant has failed to specifically assign error to each finding of fact it contends is not supported by competent evidence. Defendant merely asserts "[t]he Deputy Commissioner's and Full Commission's findings of fact and conclusions of law were unsupported by the evidence and/or contrary to the Workers' Compensation Act, N.C. Gen. Stat. Section 91-1 et seq." "[F]indings of fact to which [an appellant] has not assigned error and argued in his brief are conclusively established on appeal." *Static Control Components, Inc. v. Vogler*, 152 N.C. App. 599, 603, 568 S.E.2d 305, 308 (2002). Furthermore, our "[a]ppellate review depends on specific exceptions and proper assignments of error presented in the record on appeal. The assignment of error must clearly disclose the question presented. A single assignment [of error] generally challenging the sufficiency of the evidence to support numerous findings of fact . . . is broadside and ineffective." *Wade v. Wade*, 72 N.C. App. 372, 375-76, 325 S.E.2d 260, 266 (1985) (internal citations omitted); *see also*, N.C. R. App. P. 10. Therefore, the Full Commission's specific findings of fact are binding on appeal. However, the Commission's conclusions of law are reviewed *de novo*. *McRae v. Toastmaster, Inc.*, 358 N.C. 488, 496, 597 S.E.2d 695, 701 (2004).

Finally, we note, in his brief, plaintiff moves this Court to dismiss defendant's appeal. "Motions to an appellate court may not be made in a brief but must be made in accordance with N.C. R. App. P. 37." *Horton v. New South Ins. Co.*, 122 N.C. App. 265, 268, 468 S.E.2d

856, 858 (1996). We will limit our review only to those issues properly preserved by the parties.

*I*

[1] Defendant first claims the Full Commission erred in assessing sanctions and attorney's fees against defendant. Under Section 97-88.1 of the North Carolina General Statutes the Industrial Commission may assess "the whole cost of the proceedings including reasonable [attorney's fees]" if the Commission determines "any hearing has been brought, prosecuted or defended without reasonable ground." N.C. Gen. Stat. § 97-88.1 (2003); *see also, Hieb v. Howell's Child Care Ctr., Inc.*, 123 N.C. App. 61, 472 S.E.2d 208 (1996) (where the Full Commission properly awarded attorney's fees upon finding defendants in violation of Industrial Commission rules by terminating compensation without the Commission's approval, and by refusing to resume immediate payments following the Deputy Commissioner's order). The Commission may also assess a penalty of 10% of any "installment not paid within 14 days after it becomes due." N.C. Gen. Stat. § 97-18(g) (2003). Furthermore, Rule 802 of the Workers' Compensation Rules of the North Carolina Industrial Commission permits the Commission to impose fees and sanctions upon a party that fails to comply with the Commission's rules·or fails to timely file required forms. Workers' Comp. R. of N.C. Indus. Comm'n 802, 2005 Ann. R. (N.C.) 919, 945-46; *see also, Joyner v. Mabrey Smith Motor Co.*, 161 N.C. App. 125, 587 S.E.2d 451 (2003) (where the Full Commission properly imposed sanctions under Rule 802 when the defendant failed to answer interrogatories within the appropriate time period and failed to request any extension of time).

The Full Commission awarded plaintiff attorney's fees of 25% of the past due temporary partial disability compensation; a late payment penalty of 10% on all past due temporary partial or total disability compensation; a sanction of $1,000.00 for failure to comply with the Workers' Compensation Rules by stopping plaintiff's temporary partial disability compensation without Commission approval; and attorney's fees of 25% of all compensation payable to plaintiff. The Full Commission made the following pertinent findings of fact which are based on competent evidence and therefore binding on appeal:

41. On or about June 30, 2002, defendant unilaterally and without explanation decided to terminate plaintiff's temporary partial dis-

ability benefits. Defendant did not seek or receive Commission approval before terminating plaintiff's benefits.

42. As a result of the termination of plaintiff's benefits, plaintiff suffered financial hardship. . . . Plaintiff's financial problems compounded and aggravated plaintiff's depression resulting from the pain and disability of his compensable knee injury of January 29, 2001.

43. From the period of April 28, 2002 through the date of the hearing before the Deputy Commissioner, plaintiff received only three temporary partial disability payments, requiring plaintiff's counsel to request an order from the Commission requiring defendant to make regular payments.

44. On October 17, 2002, the Commission issued an Order requiring defendant to pay plaintiff temporary partial disability, subject to a 10% penalty for all payments more than 14 days past due. Defendant did not timely file an appeal of this Order.

45. At the time of the hearing before Deputy Commissioner Glenn, defendant had not made any additional temporary partial disability payments to plaintiff and failed to comply with the Commission's Order of October 17, 2002.

The Full Commission concluded "[d]efendant's refusal to comply with the Commission's Order of October 17, 2002 to reinstate temporary partial disability compensation and defendant's denial of psychological treatment were made without any reasonable basis." The Full Commission's conclusion that defendant's refusal to comply with the Commission's order and its denial of psychological treatment was without reasonable grounds and based on unfounded litigiousness was based on sufficient evidence such that its decision to award reasonable attorney's fees was appropriate. *See Hieb*, 123 N.C. App. at 69, 472 S.E.2d at 213. This assignment of error is overruled.

*II*

[2] Defendant next claims the Full Commission erred in awarding plaintiff compensation for his back and leg injuries prior to its guaranteed second opinion evaluation. Defendant argues it is statutorily entitled to a second opinion regarding plaintiff's permanent partial disability rating under Section 97-27(a) of the North Carolina General Statutes. Defendant requested an independent medical examination at the hearing before Deputy Commissioner Glenn to obtain a second opinion which was denied.

N.C. Gen. Stat. § 97-27 states:

(a) After an injury, and so long as he claims compensation, the employee, if so requested by his employer or ordered by the Industrial Commission, shall, subject to the provisions of subsection (b), submit himself to examination, at reasonable times and places, by a duly qualified physician or surgeon designated and paid by the employer or the Industrial Commission. . . .

(b) In those cases arising under this Article in which there is a question as to the percentage of permanent disability suffered by an employee, if any employee, required to submit to a physical examination under the provisions of subsection (a) is dissatisfied with such examination or the report thereof, he shall be entitled to have another examination by a duly qualified physician or surgeon . . . .

N.C.G.S. § 97-27 (2003). "The language of the statute, however, imposes no mandatory obligation on the Industrial Commission to order an examination. When an employee [sic] requests the Commission to order an employee to submit to an examination, whether the Commission grants or denies the employer's request is within the discretion of the Commission." *Taylor v. M. L. Hatcher Pick-Up & Delivery Serv.*, 45 N.C. App. 682, 684-85, 263 S.E.2d 788, 790 (1980). Defendant chose plaintiff's treating doctor that gave him the disability rating for his right leg. Defendant has shown no abuse of discretion by the Deputy Commissioner in finding that defendant was not entitled to an independent medical evaluation for plaintiff's leg injury. Furthermore, the Full Commission found, based on credible evidence, that plaintiff's back condition resulted from the implantation of the spinal cord stimulator and was a natural and probable result of the compensable injury by accident and resulting pain. Therefore the Full Commission did not err in affirming the Deputy Commissioner's findings and awarding plaintiff compensation for his back and leg injuries. This assignment of error is overruled.

*III*

[3] Defendant also argues the Full Commission improperly determined plaintiff's average weekly wage. In its Opinion and Award, the Full Commission found that "[d]efendant shall pay plaintiff temporary total disability compensation at the rate of $620.00 per week for the periods from March 18, 2001 through January 25, 2002 and from January 24, 2003 and continuing until further Order of the

Commission." Defendant claims plaintiff's weekly wage was inflated due to the amount of overtime he worked in the year prior to his injury by accident and his decrease in wages was not caused solely by the accident, but rather also by the lack of overtime available for plaintiff to work subsequent to his injury and his wages should be recalculated.

The Full Commission found as fact that "[o]n April 10, 2001, defendant filed an amended Form 60 listing an average weekly wage for plaintiff of $1,097.40, which yields the maximum compensation rate for 2001 of $620.00 per week." This finding was not assigned as error by defendant and is binding upon this Court. Furthermore, evidence presented at the hearing before Deputy Commissioner Glenn established that overtime was still available to defendant's workers and defendant had moved plaintiff to a position where his overtime was not limited to that available on a single production line. *See Derosier v. WNA, Inc.*, 149 N.C. App. 597, 602, 562 S.E.2d 41, 45 (2002). We find competent evidence supports the Full Commission's determination of plaintiff's average weekly wage. This assignment of error is overruled.

*IV*

[4] Finally, defendant argues the Full Commission erred in finding it is not entitled to initiate vocational rehabilitation. "In case of a controversy arising between the employer and employee relative to the continuance of medical, surgical, hospital, or other treatment, the Industrial Commission may order such further treatments as may in the discretion of the Commission be necessary." N.C. Gen. Stat. § 97-25 (2003).

The Full Commission found as fact that plaintiff has been assigned a 100% permanent partial impairment rating to his right leg and that, physically, plaintiff is capable of sedentary work for eight hours a day. However, plaintiff has been found to be unable to work due to psychological disability directly related to his chronic pain and physical disability. Plaintiff was seen by three different doctors concerning his psychological conditions, one of which conducted an independent medical examination at the request of defendant. The Full Commission found the opinions and conclusions of each of the doctors examining and treating plaintiff's psychological condition were all consistent. Furthermore, the Full Commission found "[p]laintiff has not reached maximum medical improvement of his depression and since January 24, 2003 has continued to be unable to work

due to his disabling depression and the physical pain and disability caused by his admittedly compensable injury of January 29, 2001."

In light of the findings, it is clear the Full Commission exercised its sound and proper discretion in denying defendant's request for vocational rehabilitation services until plaintiff is released by his treating physicians to return to work or participate in vocational rehabilitation services. *See, Shoemaker v. Creative Builders*, 150 N.C. App. 523, 563 S.E.2d 622 (2002) (this Court affirmed the Full Commission's finding that vocational rehabilitation was futile and was properly denied based on the testimony of the plaintiff's treating physician). This assignment of error is overruled.

For the foregoing reasons, the Opinion and Award of the Full Commission is affirmed.

Judges HUDSON and CALABRIA concur.