***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Jones, the briefs and oral arguments before the Full Commission on 25 April 2001, the record of the proceedings before Deputy Commissioner Hauser and the supplemental briefs submitted by the parties. The appealing party has shown good ground to reconsider the evidence. The Full Commission modifies the Opinion and Award to provide for payment for partial wage loss.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a pre-trial agreement and at the hearing before Deputy Commissioner Jones as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant-employer.
3. Travelers Insurance Company is the carrier on the risk.
4. Plaintiff sustained a compensable injury to his back on 3 December 1994.
5. Pursuant to the Form 21 Agreement for Payment of Compensation approved by the Commission on April 16, 1996, plaintiff received compensation at a weekly rate of $466.00 from 20 April 1995 through 21 August 1995.
6. Plaintiff returned to work for defendant-employer on 21 August 1995.
7. Plaintiff's medical records were stipulated into evidence as Stipulated Exhibit 1.
8. The issues before the Commission are: (i) whether plaintiff is entitled to compensation for loss of wage earning capacity; and (ii) if so, what is plaintiff's average weekly wage for the purpose of calculating the compensation benefits?
The Commission receives into evidence the letter dated 30 May 2001 from defense counsel, Ms. Herndon, to plaintiff's counsel, Ms. Leon, concerning calculation of plaintiff's average weekly wage, to which defendants have not objected.
 ***********
Based upon the competent evidence of record and the briefs and arguments of the parties, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is the owner of Pruett Floor Coverings, a sole proprietorship. As owner of Pruett Floor Coverings, plaintiff works with his wife, Faye Pruett, installing vinyl floors in kitchens, bathrooms and foyers in new residential construction.
2. Plaintiff has been a vinyl floor installer for over thirty years. As part of the requirements of installing vinyl flooring, plaintiff regularly carried rolls of vinyl measuring between six to twelve feet long and weighing between fifteen to two hundred fifty pounds. Plaintiff also carried a toolbox weighing between sixty to seventy-five pounds.
3. Prior to 3 December 1994, plaintiff was capable of installing vinyl flooring in up to three houses per day for approximately six days a week. Mrs. Pruett assisted with these installations.
4. On 3 December 1994, plaintiff slid in mud causing him to fall while on the job. As a result of his fall, plaintiff experienced back pain and was initially treated by a chiropractor.
5. Plaintiff continued to experience significant pain while in chiropractic treatment and presented himself to Raymond Sweet, M.D., in April 1995.
6. Dr. Sweet diagnosed plaintiff with a herniated disk at L5-S1, as well as stenosis at L4 and L5-S1. Dr. Sweet recommended a laminectomy at L5-S1 which was performed on 20 April 1995.
7. Plaintiff was unable to work from 20 April 1995 until 21 August 1995. Plaintiff was paid total disability compensation at a rate $466.00 per week for this period of disability pursuant to the Form 21 agreement approved by the Commission.
8. Plaintiff returned to work for his company on 21 August 1995. However, defendants continued to pay plaintiff total disability compensation payments until 12 October 1995.
9. On 20 June 1996, Dr. Sweet determined and the Commission finds that plaintiff sustained a 12.5 percent permanent partial disability impairment to his back as a result of his compensable injury on 3 December 1994.
10. Since his return to work plaintiff performs repair work and works on smaller houses. Plaintiff is only able to install flooring in one house per day if he is working by himself and in two houses if Mrs. Pruett is assisting him. Plaintiff relies on others to assist him with lifting or carrying glue rollers. Plaintiff avoids working on concrete floors whenever possible.
11. Mrs. Pruett has been working as a vinyl installer for approximately nineteen years. Since plaintiff's injury, Mrs. Pruett has taken on more installation responsibilities. Plaintiff's nephew also assists with the work.
12. Since returning to work, plaintiff still performs on a full-time basis substantially the same job duties he performed prior to his injury and back surgery. Plaintiff performs administrative functions, such as managing the day-to-day operations of the company and supervising other employees, as well as performing vinyl floor installation and repair work.
13. While Dr. Sweet indicates plaintiff's activities are permanently restricted, Dr. Sweet has not indicated plaintiff is unable to return to work as a vinyl installer.
14. The Form 21 approved by the Commission reflected an average weekly wage of $1,076.20 "subject to verification." On the Form 44 Application for Review filed by plaintiff, he did not raise the issue of an incorrect average weekly wage on the Form 21, but plaintiff argues this issue in his brief. In a letter to plaintiff's counsel dated 30 May 2001 defense counsel conceded that the prior carrier had erroneously computed plaintiff's average weekly wage.
15. Computation of plaintiff's earnings from his employment with defendant-employer is difficult because of the nature of the business entity and the way plaintiff accounted for the income and expenses on his tax returns. Pruett Floor Coverings is identified in tax returns as a sole proprietorship, however, in some years the proprietor is listed as plaintiff and Mrs. Pruett and in other years it is listed solely as plaintiff. The evidence showed that at all relevant times plaintiff and Mrs. Pruett performed the necessary services to operate this business, although prior to 1998 all receipts and income are reported solely in plaintiff's name. In some years plaintiff received a Form 1099 from Creative Floor Coverings, for whom defendant-employer worked as a subcontractor, indicating that all payments were made to plaintiff and in other years received two separate Form 1099s indicating payments were made to plaintiff and to Mrs. Pruett. Even in the years when plaintiff and Mrs. Pruett received separate Form 1099s, the total of the separate Form 1099s were reported as the income for the sole proprietorship on the Schedule C attached to plaintiff's joint tax returns. Based on the fact that the gross receipts and net income from defendant-employer's operations were generated by labor performed by plaintiff and Mrs. Pruett, it is not reasonable or fair to both parties to use the Form 1099s to determine plaintiff's earnings, whether before or after the date of injury. The Form 1099s clearly reflect gross receipts for defendant-employer rather than plaintiff's earnings or wages and for some periods included sums earned by Mrs. Pruett and others. Further, the Form 1099s inflate plaintiff's earnings by showing gross receipts rather than his actual earnings from his employment.
16. The best evidence of plaintiff's earnings can be derived from his joint tax returns which reflect the following for each year:
1994 —
Form 1099 — Eddie Pruett $167,878. 88 Form 1099
Gross Receipts $167,878 Sch. C, line 1
Costs of Goods
Sold $21,865 Sch. C, line 4
Gross Income $146,013 Sch. C, lines 5 7
Total Expenses $53,777 Sch. C, line 28
Net Profit $92,239 Sch. C, lines 29 31
Self-Employment Income,
Sam E. Pruett $92,239 Sch. SE
1995 —
Gross Receipts $154,238.46 Sch. C, line 1
Costs of Goods Sold $43,814.33 Sch. C, line 4
Gross Income $110,424.13 Sch. C, lines 5 7
Total Expenses $29,071.81 Sch. C, line 28
Net Profit $81,352.32 Sch. C, lines 29 31
Self-Employment Income,
Sam E. Pruett $81,352.32 Sch. SE
1996 —
Form 1099 — Eddie Pruett $184,535.51 Form 1099
Gross Receipts $184,535.51 Sch. C, line 1
Costs of Goods Sold $25,435.82 Sch. C, line 4
Gross Income $159,099.69 Sch. C, lines 5 7
Total Expenses $39,596.31 Sch. C, line 28
Net Profit $119,596.31 Sch. C, lines 29 31
Self-Employment Income,
Sam E. Pruett $119,596.31 Sch. SE
1997 —
Form 1099 — Eddie Pruett $73,246.06 Form 1099
Form 1099 — Faye Pruett $116,478.47 Form 1099
Gross Receipts $189,724.53 Sch. C, line 1
Costs of Goods Sold $43,303.84 Sch. C, line 4
Gross Income $146,420.69 Sch. C, lines 5 7
Total Expenses $55,349.85 Sch. C, line 28
Net Profit $91,070.84 Sch. C, lines 29 31
Self-Employment Income,
Sam E. Pruett $91,070.84 Sch. SE
1998 —
Form 1099 — Eddie Pruett $105,714.81 Form 1099
Form 1099 — Faye Pruett $54,386.69 Form 1099
Gross Receipts $160,102 Sch. C, line 1
Costs of Goods Sold $21,371 Sch. C, line 4
Gross Income $138,731 Sch. C, lines 5 7
Total Expenses $50,442 Sch. C, line 28
Net Profit $88,289 Sch. C, lines 29 31
Self-Employment Income,
Sam E. Pruett $44,145 Sch. SE
Self-Employment Income,
Faye Pruett $44,144 Sch. SE
1999 —
Form 1099 — Eddie Pruett $105,896.07 Form 1099
Form 1099 — Faye Pruett $75,946.65 Form 1099
Gross Receipts $181,843 Sch. C, line 1
Costs of Goods Sold $33,726 Sch. C, line 4
Gross Income $148,117 Sch. C, lines 5 7
Total Expenses $41,928 Sch. C, line 28
Net Profit $53,095 Sch. C, lines 29 31
Self-Employment Income,
Sam E. Pruett $58,958[1] Sch. SE
2000[2] —
Form 1099 — Eddie Pruett $42,033.90 Form 1099
Form 1099 — Faye Pruett $94,523.62 Form 1099
Gross Receipts $136,558 Sch. C, line 1
Costs of Goods Sold $80,973 Sch. C, line 4
Gross Income $55,585 Sch. C, lines 5 7
Total Expenses $40,013 Sch. C, line 28
Net Profit $15,572 Sch. C, lines 29 31
Self-Employment Income,
Sam E. Pruett $7,785 Sch. SE
Self-Employment Income,
Faye Pruett $7,785 Sch. SE
The foregoing tax records reveal that plaintiff and Mrs. Pruett changed the accounting method for their income starting in 1998. From 1994 through 1996, all gross receipts were reported to Pruett Floor Covering through a Form 1099 made out to plaintiff and all net income was reported as income of plaintiff despite the fact that Mrs. Pruett also provided services to this entity. In 1997, the gross receipts for Pruett Floor Covering were shown on separate Form 1099s provided to plaintiff and Mrs. Pruett; however, consistent with prior years, all of the gross receipts were reported as revenue of Pruett Floor Covering and the net income was reported as the income of plaintiff despite the fact this Mrs. Pruett provided services to this entity. Commencing in 1998, Pruett Floor Covering reflected that the net profit (income) was for services provided by plaintiff and Mrs. Pruett and they divided the income evenly. Thus, it is not fair to compare the 1994 figures with 1998 and later figures because the same accounting and tax reporting methods were not used in these periods. In order to obtain calculations that are fair and reasonable to all parties it is important to compare figures based on a common accounting and tax basis. Plaintiff appears to concede to this fact with his testimony that the 1994 income was based on services provided by plaintiff and Mrs. Pruett and his suggestion that only seventy to seventy-five percent of the 1994 income was due to his labor and that only thirty to forty percent of the earnings after he returned to work was due to his labor.
17. Plaintiff's income and defendant-employer's net profit in 2000 is not indicative of plaintiff's post-injury earnings because plaintiff sustained a new back injury in late 1999 which is not related to the compensable 1994 back injury made the basis of this claim and his further loss of earnings was due to this new back injury.
18. The only competent evidence on which the Commission may determine plaintiff's pre-injury average weekly wage is the 1994 tax return. Although the period for the 1994 tax return is not precisely the same as the fifty-two week period prior to plaintiff's December 1994 injury, it is so close in time that use of the 1994 tax information is fair and reasonable to all parties under the evidence before the Commission. The greater weight of the evidence is that defendant-employer in 1994 sustained a net profit of $92,239 of which seventy percent (70%) was from plaintiff's labor. It is not fair and reasonable to attribute the entire $92,239 to plaintiff because the evidence is that Mrs. Pruett also provided services for defendant-employer and her earnings are not otherwise accounted for in the tax records. Despite the conflicting evidence as to the amount of the profit earned from plaintiff's labor, the Commission finds that the greater weight of the evidence supports that plaintiff provided seventy percent (70%) of the labor in 1994. Based on seventy percent (70%) of the net profit of $92,239, plaintiff's personal earnings in 1994 were $64,567.30 which produces a pre-injury average weekly wage of $1,231.67 [$64,567.30 divided by 52].
19. Plaintiff returned to work on 21 August 1995; however, the evidence before the Commission does not allow a determination of plaintiff's earnings, or ability to earn, from August 21, 1995 until the end of 1995. The greater weight of the evidence supports that plaintiff was able to perform labor to generate forty percent (40%) of the net profit for defendant-employer from 1996 through 1999. The Commission finds that the period from January 1, 1996 through December 31, 1999, is sufficiently long and varied to determine plaintiff's earning capacity following his 1994 injury. The net annual earnings for Pruett Floor Coverings from 1996 through 1999 were $119,596.31, $91,070.84, $88,289, and $106,189 for an average of $101,286.29. At forty percent (40%) of the average annual net profit, plaintiff's earning capacity after his return to work in August 1995 is $40,514.52 per year for an average of $779.13 per week. The Commission has not included the earnings for 2000 because the reduction in earnings for this year is due to a separate and new back injury that plaintiff allegedly sustained in late 1999.
20. Based on the greater weight of the competent evidence, plaintiff had a pre-injury average weekly wage of $1,241.67 and his post-injury earning capacity is $779.13 for a loss of $462.54 per week for which plaintiff is entitled to receive compensation at the rate of $308.36 per week for his partial disability from the compensable injury commencing on 21 August 1995.
21. As found herein, plaintiff's earnings in 1994 averaged $1,241.67 per week, and not $1,076.20 as incorrectly computed and shown on the Form 21. The average weekly wage of $1,241.67 is fair to both plaintiff and defendant as it provides the best approximation of what plaintiff would have been earning had it not been for the compensable injury. The Form 21 reflected that the average weekly wage of $1,076.20 was expressly "subject to verification."
22. Plaintiff urges the Commission to base the calculation of plaintiff's average weekly wage and any partial wage loss on an allocation between plaintiff and Mrs. Pruett of defendant-employer's income. Plaintiff argues that prior to his compensable injury, plaintiff accounted for seventy to seventy-five percent of defendant-employer's revenues, compared to only one-third to forty percent of the revenues post injury. Based on this argument, plaintiff asserts that defendant-employer's revenues should be divided between plaintiff and Mrs. Pruett depending on the percentage of work completed by each individual. At both evidentiary hearings, plaintiff and Mrs. Pruett presented confusing, conflicting testimony as to how much work plaintiff was performing and the method by which Mrs. Pruett was paid by defendant-employer. Contrary to plaintiff's position, defendants have suggested three different methods to compute plaintiff's loss of earning capacity as a result of this injury. As expressed above, although the evidence is conflicting, the Commission finds that the net income of defendant-employer should be compared and that the greater weight of the evidence is that plaintiff earned seventy percent (70%) of the pre-injury net profit and only forty percent (40%) of the post-injury net profit.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. On 3 December 1994, plaintiff sustained a compensable injury by accident to his back. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff received total disability compensation at a rate of $466.00 per week from 20 April 1995 through 12 October 1995. N.C. Gen. Stat. § 97-29.
3. Although plaintiff did not assign as error the amount of plaintiff's average weekly wages, the Commission may review and reconsider the evidence in order to make the record comply with the law, even though there is no exception to the finding or conclusion. Nash v. ConradIndus., Inc., 62 N.C. App. 612, 303 S.E.2d 373, aff'd, 309 N.C. 629,308 S.E.2d 334 (1983); Garmon v. Tridair Indus., Inc., 14 N.C. App. 574,188 S.E.2d 523 (1972). Accordingly, plaintiff's average weekly wage at the time of the injury was $1,241.67, which yields the maximum compensation rate for 1994 of $466.00.
4. As the result of the compensable injury by accident, plaintiff sustained a 12.5 percent permanent partial impairment to his back for which he is entitled to receive compensation for 37.5 weeks. N.C. Gen. Stat. § 97-31(23).
5. As the result of the compensable injury by accident, plaintiff was incapable after his injury of earning the same wages he earned before his injury in the same employment. Therefore, alternatively, plaintiff is entitled to receive compensation for his partial wage loss beginning 21 August 1995 for 300 weeks from the date of injury on 3 December 1994 based on two-thirds of the difference between his average weekly wage at the time of the accident and wages he was able to earn after the accident. N.C. Gen. Stat. § 97-30. Federal and state earnings and wage reports are competent evidence to be used in calculating an employee's average weekly wage. McAnelly v. Wilson Pallet and CrateCo., 120 N.C. App. 127, 461 S.E.2d 894 (1995). Plaintiff had a post-injury earning capacity of $779.13 which produces a weekly loss of $462.54 for which plaintiff is entitled to compensation at the rate of $308.36 per week for his partial loss of earning capacity from 25 August 1995 until 2 September 2000, which is 300 weeks from the date of the injury by accident. N.C. Gen. Stat. § 97-30; Harris v. NorthAmerican Products, 125 N.C. App. 349, 481 S.E.2d 321 (1997). This amount is also subject to a deduction for total disability compensation already paid to plaintiff from 21 August 1995 through 12 October 1995.
6. Plaintiff is entitled to select the more favorable remedy under N.C. Gen. Stat. § 97-30 or -31. Compensation for his partial wage loss is the more favorable remedy for plaintiff under the statute.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. For the partial incapacity plaintiff sustained as a result of his compensable injury by accident, defendants shall pay plaintiff weekly compensation equal to two-thirds of the difference between his average weekly wages before the injury and the average weekly wages he was able to earn thereafter at the rate of $308.36 per week beginning 21 August 1995 and ending 2 September 2000. Said amount is subject to a deduction for total disability compensation already paid to plaintiff from 21 August 1995 through 12 October 1995 and shall be paid in a lump sum subject to an attorney's fee approved below.
2. Plaintiff's attorney shall receive a reasonable attorney's fee of twenty-five percent of the compensation awarded plaintiff in paragraph one of this award. Said amount shall be deducted and paid directly to plaintiff's counsel.
Defendants shall pay all costs.
This the ___ day of July 2002.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/______________ RENE C. RIGGSBEE COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER
LKM/gas
[1] This sum is reported as $58,958 on the tax return, Schedule SE, however, the correct figure appears to be $53,095 because there is no self-employment earnings reported for Faye Pruett other than her one-half interest in Pruett Floor Covering.
[2] Plaintiff testified that in 1999 he injured his back and that he no longer performed the manual labor part of the floor covering work after this injury. The diminution of earnings for 2000 from prior years appears to arise from this new injury which is separate from the compensable injury made the basis of this workers' compensation claim.