***********
The undersigned have reviewed the Opinion and Award based upon the record of the proceedings before Deputy Commissioner DeLuca and the briefs and arguments of the parties. The parties have not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission adopts the Opinion and Award of Deputy Commissioner DeLuca with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 PRE-HEARING STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction of the parties and of the subject matter; *Page 2 
2. All parties are subject to and bound by the North Carolina Workers' Compensation Act;
3. All parties have been properly designated and there is no question as to misjoinder or nonjoinder of parties;
4. An employment relationship existed between the employee and employer on April 4, 2008;
5. The Carrier on the risk for Defendant-Employer in this claim is Southern Pilot Insurance;
6. Although Defendants filed a Form 61 on April 24, 2008 denying the compensability of this claim, Defendants notified the Deputy Commissioner at the hearing that liability for the incident itself was not being contested.
 POST-HEARING STIPULATIONS
1. The parties shall submit payroll records from Defendant-Employer for Plaintiff for the dates of April 4, 2008 through May 9, 2008 for consideration by the Commission;
2. Plaintiff did not unjustifiably refuse an offer of suitable employment by Defendant-Employer;
3. The issue of whether Plaintiff is entitled to receive temporary total disability benefits under N.C. Gen. Stat. § 97-29 from the date of his injury, April 4, 2008, through June 12, 2008 is at issue and is to be determined by the Commission;
4. Plaintiff earned $7.00 per hour working forty hours per week for C C Hardware from June 12, 2008 through July 12, 2008;
5. Plaintiff thereafter earned $8.00 per hour working forty hours per week for C C Hardware from July 13, 2008 through October 1, 2008; *Page 3 
6. While he was still working for C C Hardware, Plaintiff began delivering pizzas for Pepperoni Grill beginning August 8, 2008, earning $6.50 per hour for an average of seven hours per week. It is unclear when Plaintiff stopped working for Pepperoni Grill;
7. Plaintiff looked for work during this period of time and he ultimately found work with Mansfield Heating and Air in a lighter duty residential heating and air capacity and began working there on October 2, 2008;
8. Plaintiff contends that he earned $12.00 per hour working forty hours per week and Defendants contend that he earned $12.50 per hour working forty hours per week for Mansfield Heating and Air from October 2, 2008 through the date of the hearing;
9. Plaintiff is entitled to benefits under N.C. Gen. Stat. § 97-30 for this time worked in lesser paying employment since June 12, 2008 in an amount to be determined by the Commission based upon the determination of Plaintiff's average weekly wage;
10. Plaintiff has not yet reached maximum medical improvement from his compensable injuries, so this receipt of benefits shall not constitute an election of remedies pursuant to Vernon v.Mabe;
11. Plaintiff's most munificent remedy under the Workers' Compensation Act is yet to be determined and is not ripe for determination at this time because he has not yet reached maximum medical improvement from his compensable injuries;
12. Plaintiff's average weekly wage and compensation rate remain at issue and are to be determined by the Commission;
13. Plaintiff's average weekly wage is at least $696.15 and his compensation rate is at least $464.10, pursuant to the Form 22 provided by Defendants, but the issue of whether Plaintiff's average weekly wage and compensation rate should be higher according to the *Page 4 
testimony at hearing as to any per diem remains at issue;
14. The issue of whether Plaintiff is entitled to a ten percent penalty under N.C. Gen. Stat. § 97-12(3) remains at issue and is to be determined by the Commission;
15. Plaintiff is entitled to payment for the attendant care that he received but the amount of attendant care to which he is entitled and is to be paid remains at issue and is to be determined by the Commission;
16. Defendants shall cause all medical payments for treatment received by Plaintiff for his compensable injury to be paid, including the items submitted by Plaintiff on his Form 25P; and
17. Defendants shall continue to pay for Plaintiff's medical treatment for his compensable injury, including, but not limited to treatment with Dr. Hultman, for so long as such treatment is reasonably required to effect a cure, lessen Plaintiff's pain or lessen his period of disability.
 *********** EXHIBITS
The following exhibits were received by the Commission as evidence and marked stipulated exhibit 1:
 1. Pre-Trial Agreement
 2. All NCIC Forms from the April 4, 2008 injury
 3. Index/Summary of Medical Records and the medical records included therein from the April 4, 2008 injury
 4. Plaintiff's Responses to Defendants' Discovery dated August 14, 2008
 5. Defendants' Responses to Plaintiff's Discovery dated August 18, 2008 *Page 5 
 6. EPA Regulations, Section 608
 7. Photographs of Plaintiff's hands
 8. Payroll records from Employer-Defendant for Plaintiff
Plaintiff's exhibit 1 and Defendants' exhibit 1 attendant care costs were also admitted into the record.
 *********** ISSUES
The issues for resolution are as follows:
1. What is Plaintiff's average weekly wage?
2. What are the compensable consequences of Plaintiff's injury?
3. Whether Plaintiff is entitled to a ten percent penalty under N.C. Gen. Stat. § 97-12(3) for Defendant-Employer's willful violation of N.C. Gen. Stat. § 87, Article 2 and associated safety regulations requiring licensure for the type of work Plaintiff was instructed by Defendant-Employer to perform on the date of his injury?
 ***********
Based upon all of the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
1. On the date of the hearing before Deputy Commissioner DeLuca, Plaintiff was twenty-four years of age, having a birthday of April 26, 1984. Plaintiff graduated from high school in 2002 and took classes for two years at Harford Community College but did not earn a degree.
2. Plaintiff began working for Defendant-Employer as a mechanic's helper in *Page 6 
May 2006. Defendant-Employer is in the commercial heating and air conditioning maintenance business.
3. On April 4, 2008, Plaintiff arrived at work and was advised by Tommy Newber, owner of Defendant-Employer, that he would be pumping down an air conditioning unit. When Plaintiff informed Mr. Newber that he was not certified to perform that task he was told that he would be instructed and supervised by Brad Rowe, who was a certified technician.
4. Mr. Rowe observed Plaintiff attaching the gauge manifold to the air conditioning unit and checked Plaintiff's work before going inside to unload his tools. After Plaintiff pumped down the air conditioning unit outside he noticed that there was still pressure on his high side gauge. Plaintiff then went inside to ask Mr. Rowe why there was still pressure on the hoses. Mr. Rowe checked Plaintiff's work again, then informed Plaintiff that he had made a mistake when connecting the hoses to the unit.
5. When Plaintiff asked what he should do to fix the problem, Mr. Rowe instructed him to remove the hose and replace it with a brass cap as quickly as possible. Plaintiff had begun to remove the hose when liquid R-22 Freon squirted out. After Plaintiff commented to Mr. Rowe that there must be a better way to fix the problem, Mr. Rowe responded, "You have got to do it a lot faster than that, son."
6. Upon Mr. Rowe's direction and under his supervision, Plaintiff removed the red hose completely, at which point liquid R-22 Freon gushed out onto Plaintiff's gloved hands. Plaintiff tried to replace the valve with the brass cap as Mr. Rowe had instructed him to do, however, the amount of pressure made it impossible for Plaintiff to do so. The liquid R-22 Freon burned Plaintiff's hands to the point that the gloves he was wearing fused to his hands.
7. At the time Plaintiff was attempting to replace the valve with the brass cap, Mr. Rowe was *Page 7 
inside the building. Plaintiff asked his co-workers, Chris Cooper and John Sansone, to help him remove his gloves from his burned hands. When they did so, it took all of their strength and ripped off the top layers of Plaintiff's skin. Plaintiff went inside and told Mr. Rowe that he could barely move his fingers and that he was in too much pain to continue working. Plaintiff then drove himself home.
8. The greater weight of the credible evidence fails to show that Plaintiff's injury was caused by Defendant-Employer's willful failure to comply with any statutory requirement or lawful order of the Commission.
9. Shortly thereafter, Plaintiff's girlfriend, Heather Cooper, arrived to check on Plaintiff after receiving a call that he had been injured. Ms. Cooper rushed Plaintiff to the nearest urgent care facility, Coastal Immediate and Primary Care, for medical treatment.
10. At Coastal Immediate and Primary Care, Plaintiff was seen by Misty Justus-Jones, P.A.-C. Ms. Justus-Jones found that Plaintiff had diffuse blistering and edema of both hands and multiple fingers, with more severe injuries on the right hand. Plaintiff expressed feelings of tingling and numbness with palpation in his hands. Ms. Justus-Jones dressed his burns and prescribed Silvadene cream and pain relievers.
11. Plaintiff returned to Coastal Immediate and Primary Care the next day, April 5, 2008, for further treatment of his second and third degree burns. He reported to Ms. Justus-Jones that the pain medication he had received helped him only minimally, and that he had difficulty sleeping due to his pain. Plaintiff's hands were soaked to loosen the bandages before they were removed and the area was debrided and irrigated with a saline wash.
12. As both of his hands were badly burned, Plaintiff could not feed, bathe, dress, or drive himself or change his bandages twice daily as he was required to do, and *Page 8 
therefore, Ms. Cooper performed these activities for him. Ms. Cooper spent four to five hours per day helping Plaintiff in this manner for one month to six weeks after his injury. At the time that Ms. Cooper provided the attendant care to Plaintiff, she was working at Wal-Mart in Wilmington, and was not a skilled healthcare provider.
13. Plaintiff continued to treat with Coastal Immediate and Primary Care throughout April 2008. Plaintiff was referred to Dosher Memorial Hospital for physical therapy whirlpool treatment. Plaintiff underwent an initial evaluation for this treatment on April 17, 2008 and was recommended for physical therapy whirlpool treatment three times a week for four weeks. Plaintiff only received two sessions of whirlpool therapy because he could not afford to pay for the treatment on his own after Defendants initially denied his claim .
14. Defendant-Employer offered Plaintiff work on or about May 8, 2008. Plaintiff told Mr. Newber that he was scared to come back to work with Mr. Rowe. The Full Commission finds that this fear was reasonable given the circumstances of Plaintiff's injury. Plaintiff considered himself to have been terminated by Defendant-Employer following his conversation with Mr. Newber.
15. Dr. Hultman of the North Carolina Burn Center, an expert in general surgery, surgical critical care, and plastic surgery, testified that it was his opinion that Plaintiff should not have been working at all during this period of time given the condition of his hands after receiving the burns. Defendant-Employer paid Plaintiff some wages from the date of Plaintiff's injury on April 4, 2008 through May 9, 2008, and the parties have stipulated to the amounts paid to Plaintiff. The Full Commission finds that Plaintiff was totally disabled during this time.
16. Plaintiff began looking for work during this time, and he ultimately found a *Page 9 
forty hour per week job as a cashier paying $7.00 per hour with C C Hardware. Plaintiff started this job on June 12, 2008, and on July 13, 2008 his pay was increased to $8.00 per hour for forty hours per week. Plaintiff continued to have problems with his hands as well as nightmares during this period of time.
17. While he was working for C C Hardware, Plaintiff continued to look for a higher paying job. On August 8, 2008 Plaintiff took a job at Pepperoni Grill delivering pizzas an average of seven hours per week earning $6.50 per hour. It is unclear when Plaintiff stopped working at Pepperoni Grill.
18. Because his claim had been denied, Plaintiff did not receive any further medical treatment for his burns until August 27, 2008, when he saw general physician James B. Adams, M.D. Dr. Adams noted that it took about four months for Plaintiff's skin to heal on his hands, and that he had open wounds as late as July 2008. Plaintiff was still experiencing a continuous pins and needle sensation, and Dr. Adams diagnosed dysesthesias, hyperesthesia, and allodynia in both hands. Plaintiff also indicated that his right third finger had no sensation and that he had difficulty closing the fingers on his right hand. Due to his concerns about the duration of Plaintiff's limitations, Dr. Adams referred Plaintiff to John Liguori, M.D. for assessment. Plaintiff could not afford to pay for this assessment and, therefore, he continued to go without treatment.
19. Plaintiff continued looking for a higher paying job and found work with Mansfield Heating Air as a residential mechanic's helper. Plaintiff began working in this lighter duty residential heating and air conditioning position on October 2, 2008. Plaintiff earned $12.00 per hour for forty hours per week, and was still working in this capacity as of the date of the hearing before Deputy Commissioner DeLuca. The work with Mansfield Heating Air was lighter duty than Plaintiff's job with Defendant-Employer because Plaintiff did not *Page 10 
have to lift as much, and because he did not have to work with Freon. Plaintiff felt safer in his employment with Mansfield Heating Air.
20. After Defendants accepted Plaintiff's claim as compensable, the parties had difficulty obtaining an appointment with Dr. Ligouri and, therefore, they agreed that Plaintiff should be sent to the North Carolina Jaycee Burn Center at North Carolina Memorial Hospital in Chapel Hill.
21. Plaintiff first treated with Dr. Scott Hultman of the North Carolina Jaycee Burn Center for chronic pain syndrome and peripheral nerve syndrome on March 18, 2009, at which time Dr. Hultman assessed Plaintiff's condition and gave him compression gloves to wear. On March 31, 2009, Plaintiff underwent electrodiagnostic testing and a nerve conduction study at North Carolina Memorial Hospital. On April 15, 2009, Plaintiff returned to Dr. Hultman to discuss the results of the tests, at which time Dr. Hultman assessed Plaintiff with intermediate partial thickness burns based on his review of Plaintiff's medical records and photographs of Plaintiff's hands following the accident. Dr. Hultman opined that Plaintiff's injury would be quite acutely painful with a potential for long-term chronic pain. Plaintiff experienced numbness, temperature intolerance, and a pins and needles sensations in his hands. Dr. Hultman testified that over fifty percent of his patients with hand burns have symptoms like Plaintiff's. Dr. Hultman opined that Plaintiff probably had some element of edema or compression from his burns that may not have been adequately managed over the last year, and that this contributed to his carpal tunnel symptoms. Dr. Hultman testified, and the undersigned find, that Plaintiff's pins and needles sensations and numbness were most likely caused by his April 4, 2008 burn injury.
22. Dr. Hultman testified that Plaintiff would require dressing changes once to twice per day while his skin regenerated. He further testified that four to five hours of attendant care for *Page 11 
the first month after Plaintiff's injury would be on the high side, but was likely reasonable given that Plaintiff could not dress, undress, go to the bathroom, bathe, feed himself, drive or change his own bandages. After one month and up to six-weeks following Plaintiff's injury, Dr. Hultman testified that one to two hours of attendant care per day was reasonable. The Full Commission finds this testimony by Dr. Hultman to be credible and accepts it as fact.
23. Dr. Hultman stated that the soonest he has seen people return to work after sustaining burns such as Plaintiff's is six months. He noted that the skin that grows back after such burns is thinner and is therefore fragile and susceptible to mechanical trauma. Dr. Hultman opined that, had he be been treating Plaintiff at the time, he would have given Plaintiff total disability for the month following his injury. Furthermore, Dr. Hultman was very leery about letting someone in Plaintiff's condition return to work without restrictions before three months had passed.
24. Dr. Hultman also testified that he had observed quite a bit of correlation between burn injuries and the development of carpal tunnel syndrome, however, he had not yet diagnosed Plaintiff with carpal tunnel syndrome.
25. Based on the testimony of Plaintiff and Dr. Hultman, and the stipulation of the parties, Plaintiff has not yet reached maximum medical improvement from his compensable injury. Continuing treatment with Dr. Hultman is necessary to lessen his pain from his compensable injuries.
26. When Plaintiff was working for Defendant-Employer in the year prior to his injury, he was paid a weekly per diem of $100 per week for four months of work in New Bern and for four months of work in Clayton. This money was paid to Plaintiff in addition to his regular wages. Plaintiff did not have to submit receipts for the expenditure of this money, and *Page 12 
the amount of per diem was the same every time Plaintiff went out of town, and was to be spent at Plaintiff's discretion. As such, the per diem paid to Plaintiff was in lieu of wages.
27. Based upon Plaintiff's testimony that he was paid $100 per week per diem for the four months that he worked in New Bern and for the four months that he worked in Clayton, Plaintiff's yearly earnings as reflected on the Form 22 provided by Defendants should be increased by $3,200 ($100 x 32 weeks), thus increasing his average weekly wage from $696.15 as indicated on the Form 22 submitted by Defendants, to $757.69 per week, yielding a compensation rate of $505.13.
28. The proper compensation rate for attendant care services in this case is $14.00 per hour.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff suffered a compensable injury by accident to his hands bilaterally on April 4, 2008. N.C. Gen. Stat. § 97-2(6).
2. Under N.C. Gen. Stat. § 97-2(5), which provides for the inclusion of allowances made to employees in lieu of wages, Plaintiff's per diem should be included in his average weekly wage calculation. Plaintiff was not required to submit receipts for the expenditure of this money, Plaintiff received the same amount every time he went out of town, and the money was to be spent at Plaintiff's discretion. This money was not taken from Plaintiff's regular pay, but rather, was in addition to it. SeeGreene v. Conlon Construction Co.,184 N.C. App. 364, 367, 646 S.E.2d 652, 665 (2007). Plaintiff's correct average weekly wage is $757.69, with a compensation rate of $505.13. *Page 13 
3. Plaintiff is entitled to temporary total disability benefits at the rate of $505.13 from the date of his injury through June 11, 2008. N.C. Gen. Stat. § 97-29.
4. Defendant-Carrier is entitled to a credit for any money that Plaintiff received from Defendant-Employer during his period of disability. See Smith v. First Choice Services,158 N.C. App. 244, 251, 580 S.E.2d 743, 749 (2003),disc. rev. denied, 357 N.C. 461, 586 S.E.2d 99 (2003). N.C. Gen. Stat. § 97-42.
5. Plaintiff is entitled to temporary partial disability benefits from June 12, 2008 through July 11, 2008 at the rate of $318.46. N.C. Gen. Stat. § 97-30.
6. Plaintiff is entitled to temporary partial disability benefits from July 12, 2008 through October 2, 2008 at the rate of $291.79. N.C. Gen. Stat. § 97-30. Plaintiff's wages from Pepperoni Grill are not considered as evidence of his wage-earning capacity during this period of time because Plaintiff was earning this money working more hours than he was working prior to his compensable accident, and thus these wages are not a reliable indicator of his wage-earning capacity. See Harris v. North American Products,125 N.C. App. 349, 355-57, 481 S.E.2d 321, 325-26 (1997).
7. Plaintiff is entitled to temporary partial disability benefits from October 2, 2008 through the date of the hearing and ongoing until further order of the Commission at the rate of $185.13. N.C. Gen. Stat. § 97-30.
8. Plaintiff is entitled to payment for attendant care for four hours per day for the first month following his injury, and for two hours per day for the two weeks thereafter at the rate of $14.00 per hour. N.C. Gen. Stat. § 97-25.
9. As Plaintiff has not yet reached maximum medical improvement from his compensable injuries, this receipt of benefits shall not constitute an election of remedies. Vernon *Page 14 v. Mabe. 336 N.C. 425, 444 S.E.2d 191 (1994). The issue of Plaintiff's most munificent remedy under the Workers' Compensation Act is yet to be determined and is not ripe for determination at this time because he has not yet reached maximum medical improvement from his compensable injuries. Knight v.Wal-Mart, 149 N.C. App. 1, 562 S.E.2d 434 (2000).
10. Plaintiff is not entitled to a ten percent penalty on all sums awarded to him based upon Defendant-Employer's alleged failure to comply with EPA regulation 608. N.C. Gen. Stat. § 97-12.
11. Plaintiff is entitled to medical treatment, including but not limited to treatment with Dr. Hultman, which is reasonably designed to lessen his pain and his period of disability from his compensable injuries. To the extent that Defendants have not yet paid for Plaintiff's prior medical treatment and medical supplies for his compensable injury, Defendants shall cause this treatment and these medical supplies to be paid. N.C. Gen. Stat. § 97-25.
12. Defendants' defense of this claim was reasonable, and not based upon unfounded litigiousness. N.C. Gen. Stat. § 97-88.1. As such, Plaintiff's request for attorney's fees under N.C. Gen. Stat. § 97-88.1 is denied.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the undersigned enters the following:
 AWARD
1. Subject to attorney's fees hereinafter approved, Defendants shall pay temporary total disability compensation to Plaintiff at the rate of $505.13 per week from April 5, 2008 through June 11, 2008. Such amount that has already accrued shall be paid in a lump sum.
2. Such compensation as is presently owed and due to Plaintiff under paragraph 1 of this *Page 15 
Award shall be paid in a lump sum without commutation, and is subject to an attorney's fee approved herein.
3. A reasonable attorney fee of twenty-five percent (25%) of the compensation due Plaintiff is approved for Plaintiff's counsel.
4. Defendants shall pay temporary partial disability compensation to Plaintiff for the period from June 12, 2008 through July 12, 2008 at the rate of $318.46 per week. Such amount that has already accrued shall be paid in a lump sum, and is subject to an attorney's fee approved herein.
5. Defendants shall pay temporary partial disability compensation to Plaintiff for the period from July 12, 2008 through October 2, 2008 at the rate of $291.79 per week. Such amount that has already accrued shall be paid in a lump sum, and is subject to an attorney's fee approved herein.
6. Defendants shall pay temporary partial disability compensation to Plaintiff for the period from October 2, 2008 through the date of this Opinion and Award at the rate of $185.13 per week. Such amount that has already accrued shall be paid in a lump sum, and is subject to an attorney's fee approved herein.
7. Defendants shall pay temporary partial disability compensation to Plaintiff for the period from the date of this Opinion and Award and ongoing at the rate of $185.13 per week, subject to an attorney's fee approved herein.
8. Defendants shall pay all medical expenses incurred or to be incurred by Plaintiff as a result of his compensable injuries for as long as such examinations, evaluations and treatment may reasonably be required to effect a cure, provide relief or tend to lessen the period of disability. This shall include attendant care in the amount of four hours per day for the first month following Plaintiff's injury, and for two hours per day for the two weeks thereafter. The rate for this compensation shall be $140.00 per hour. *Page 16 
9. Defendant-Carrier is entitled to a credit for any monies paid to Plaintiff by Defendant-Employer in the period after April 4, 2008. N.C. Gen. Stat. § 97-42.
10. Defendants shall pay the costs, including an expert witness fee of $750.00 to Dr. Hultman.
This the 29th day of April, 2010.
 S/___________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ DANNY L. McDONALD COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1